## Richmond.

### HENINGER v. HENINGER.

NOVEMBER 9th, 1893.

1. DIVORCE A MENSA ET TORO—*Case at bar.*—On the facts set forth in this court's statement a decree for a divorce from bed and board and the custody of her children, *held,* properly granted to the wife.

2. ALIMONY—*Rule.*—The general rule is that the husband's income is the fund from which allowance for alimony is allowed.

3. IDEM—*Education of children*—*Case at bar.*—Where husband's estate consists of unimproved land, the net income of which is not clearly shown, *held,* that a decree which requires the husband to provide for his wife and five infant children a permanent home and $1,000 a year for alimony and the support and education of the children, will not be affirmed, though the jurisdiction of the court to provide for the education of the children is unquestionable.

Argued at Wytheville.    Decided at Richmond.

Appeal from sundry decrees of the circuit court of Tazewell county, the last rendered at the November term, 1892, in a suit for divorce *a mensa et toro* by Catharine V. Heninger against Samuel T. Heninger. The bill charges that while the defendant's treatment of the complainant has at no time during their married life been pleasant or agreeable, he has " of late " treated both her and their children harshly and cruelly; that for some time he has continually quarreled with her, although she has at all times tried to be to him a dutiful and faithful wife, and that he finally resorted to blows; that about two weeks before the commencement of the suit he beat her

with a large stick, inflicting a serious and painful wound, and at the same time struck her violently in the face with his fist; that he subsequently again brutally assaulted her, taking her by the hair of the head, and cursing and abusing her; that he also drew his pistol, and so terrified the complainant and her children that they fled from home and sought shelter and protection at the house of a neighbor, where they have since remained.

The circuit court, after evidence had been taken, granted a divorce, and awarded the care and custody of the children to the complainant: and by several subsequent decrees it made provision for the maintenance of the wife and for the support and *education* of the children. Other facts are stated in the opinion.

*Chapman & Gillespie*, for appellant.

*Henry & Graham*, for appellee.

LEWIS, P., delivered the opinion of the court.

This was a suit for a divorce from bed and board, on the ground of cruelty on the part of the husband, the defendant below and appellant here. The circuit court decreed a divorce, and gave the custody of the five infant children to the wife. It also by a subsequent decree ordered the defendant to provide for them a suitable home, and to pay, for permanent alimony and the support and education of the children, until the further order of the court, a thousand dollars a year, in two equal semi-annual instalments.

The evidence in support of the charges of cruelty is ample and conclusive, and there is no doubt that a divorce and the custody of the children were rightly granted to the wife. The defence set up in the answer that the complainant was persuaded by certain of her relatives hostile to the defendant to

bring the suit merely to harrass him and get possession of his property, and that the charge of cruelty is false—is not only not sustained, but is clearly disproven.

Unfortunately, however, the record, while full enough on these points, does not contain sufficient to enable us to satisfactorily determine what is a proper allowance for permanent alimony and the support and benefit of the children.

The appellant is a farmer and the owner of two tracts of land—one containing 596 acres, the other 2,700 acres—situate in Tazewell, only a comparatively small portion of which is cleared. The residue is unimproved, much of it being " wild mountain land." The cleared portion, however, is valuable; but what is its value, or what ought to be taken as a fair estimate of the appellant's income, is not shown with any degree of certainty or precision.

One of the complainant's most intelligent witnesses, a farmer, who lives in the immediate neighborhood, estimates the annual value of both tracts at $1,100, from which sum he deducts $300 for taxes, repairs, etc., leaving $800 as, in his judgment, the net annual value. Other witnesses put it lower, the estimate of one or more of them not exceeding five or six hundred dollars. It appears that shortly before the commencement of the suit the appellant sold the greater part of his personalty for the purpose, as he says, of paying his debts. The value of the residue does not appear. The commissioner, who was directed to make certain inquiries in the cause, reported, in general terms, that " the property now owned " by the appellant is worth $30,000; but he says nothing, specifically, as to the income. In 1890, before the suit was commenced, the appellant contracted to sell the land for $45,000, but the purchaser has refused to take it, and the matters in controversy between them in regard to the sale have not yet been settled. The case has been argued for the appellee largely on the assumption that the appellant is worth $60,000, and that the annual value of his estate ought to be put at

four per cent on that sum, or $2,400; but this assumption, whatever the fact may be, is not warranted by the record.

In respect to alimony, the general rule is that the income of the husband, however derived or derivable, is the fund from which the allowance is made. 2 Bish., Mar. & Div. (5th ed.), sec. 447; *Bailey* v. *Bailey*, 21 Gratt., 43; *Cralle* v. *Cralle*, 84 Va., 198. In his recent work on Marriage, Divorce and Separation, section 1006, Bishop, in treating of the facts upon which the amount of permanent alimony is determined, amplifies the rule, thus: "In exercising," he says, "the judicial discretion which regulates the amount of the permanent alimony, the judge should take into contemplation the past conduct of the parties, respectively, the source of the husband's property, what persons, if any, each is under a legal duty to support, the earnings and acquiring capabilities of each, the wife's pecuniary means equally with the husband's, the health of each, and their respective ages; and especially, but not exclusively, he should consider what sum, chargeable upon the faculties of the erring husband, will leave the financial condition of the innocent wife not inferior to what it would be if his conduct had been correct." And he adds that as every injury is, in law, entitled to its pecuniary compensation, the wife should have, in addition to the maintenance thus appearing, something for her physical and mental sufferings, and the loss of the husband's society.

So, also, the amount for maintenance of the minor children, when, as in the present case, they are assigned to the wife, depends, not only on their needs, but on the husband's fortune and station in life, and all the circumstances of the particular case. As to this matter, as in the case of alimony, the court, with all the attainable lights before it, must exercise a sound discretion. *Harris* v. *Harris*, 31 Gratt., 13; *Bailey* v. *Bailey, supra.*

The same considerations apply in regard to the education of the children. This, however, is denied by the appellant, on

the ground that parents are not compellable to educate their children. It is true that while the elementary writers include among the duties of parents to their children that of education, it is a duty of imperfect obligation. Nevertheless, as Blackstone observes, it is a duty pointed out by reason, and of far the greatest importance of any. Chancellor Kent takes the same view, and adds the remark that " a parent who sends his son into the world uneducated does a great injury to mankind, as well as to his own family, for he defrauds the community of a useful citizen, and bequeaths to it a nuisance." 2 Kent, Comm., 195.

It would be strange, then, if the effect of a decree, granting a divorce, and assigning the custody of the infant children to a suitable person, were held to relieve the offending parent of a duty he owes both to his offspring and to society, when he has the means to fulfill it. If this were the effect of the decree, the offender would make advantage of his own wrong, and the interference of the law, intended for the benefit of the children, might work an entirely different result.

The statute, now carried into section 3263 of the Code, authorizes the court granting a divorce to make " such further decree as *it shall deem expedient concerning the estate* and maintenance of the parties, or either of them, and the care, custody, and maintenance of their minor children"; and while nothing is said in express terms about education, yet the evident purpose of the legislature was to give to the court the largest discretion in respect to the estate of the parties, and not to relieve the offending parent of any duty, moral, social, or otherwise. Under a statute authorizing the court to " make such disposition of and provision for the children as shall appear most expedient," the jurisdiction of the court to provide for their education, in a manner suitable to the parent's means and station in life has been held to be unquestionable; and the language of our statute is little, if any, less comprehensive. 2 Bish., Mar. Div. & Sep., sec. 1214.

For the reasons, however, already stated, the case must be sent back for a further reference to a commissioner in order that the court may be put in possession of all the facts and circumstances essential to an equitable determination of the rights of the parties. Meanwhile the decree of the 9th of December, 1891, making temporary provision for the wife and children, *i. e.*, requiring the appellant, among other things, to pay eighty dollars monthly for their maintenance, will remain in force. And when the case shall have been thus developed, it will be time enough to finally pass upon the question raised here by the appellee as to an additional allowance in the way of counsel fees.

The appellant will pay the costs of this appeal.

AFFIRMED IN PART AND REVERSED IN PART.