BERRY *et al.* v. BERRY, administratrix, *et al.*

No. 17499. ARGUED JUNE 11, 1951—DECIDED JULY 24, 1951.

*Rache Bell* and *Morris B. Abram,* for plaintiffs in error.

*Christopher & Futral,* and *Kennedy & Kennedy,* contra.

ATKINSON, Presiding justice. (After stating the foregoing facts.) ■ The first question for decision is whether the decree awarding Mrs. Margaret Berry $25 a month as permanent alimony, so long as she remained unmarried, survived the death of the husband as a charge upon his estate.

It is stated in 17 Am. Jur. 473, § 608: "According to the weight of authority, a decree, granted in connection with an absolute divorce, for the regular periodical payments of alimony to the wife for her maintenance and support is terminated upon the husband's death, in the absence, at least, of some stipulation in the order which would require payments after his death." In 27 C. J. S. 999, § 240 (b), it is said: "The right to receive alimony, and the corresponding duty to pay it, being personal, are generally considered as terminating on the death of either of the parties, where no statute to the contrary exists and the judgment or decree is silent on the subject." However, counsel for the plaintiffs in error, in arguing that the obligation to pay alimony is not a personal one, but a charge upon the husband's estate, insist that Code §§ 30-201 and 30-218 contain the exhaustive basic law of Georgia on the issue now before the court, and that the law of other States has no bearing thereon.

Code § 30-201 defines alimony as "an allowance out of the husband's estate, made for the support of the wife when living separate from him." Code § 30-209 declares: "The jury rendering the final verdict in a divorce suit may provide permanent alimony for the wife, either from the corpus of the estate or otherwise, according to the condition of the husband." Under a proper construction of these Code sections, alimony may consist of an allowance out of the husband's estate, or of a personal obligation to pay stated sums out of his future earnings. If alimony was restricted to an allowance out of a husband's estate, a man who had no property, but who was able-bodied and capable of earning a salary, could not be required to pay alimony. See, in this connection, *Johnson v. Johnson,* 131 *Ga.* 606 (2) (62 S. E. 1044), where a husband contended that he was not liable for permanent alimony because he had no property, and it was held: "A husband may be decreed to pay permanent alimony,

although he may not have property either at the time of the filing of the libel for divorce or at the time of the trial, if it appears that he has an earning capacity."

The plaintiffs in error rely strongly on Code § 30-218, which declares: "After permanent alimony shall be granted, upon the death of the husband the wife shall not be entitled to any further interest in his estate in her right as wife, but such permanent provision shall be continued to her, or a portion of the estate equivalent thereto shall be set apart to her."

*Wise* v. *Wise*, 156 *Ga.* 459 (2) (119 S. E. 410), contains an exhaustive history of the various sections relating to alimony. While the question there determined was that, where specific property was awarded as alimony, the wife took an absolute title thereto without limitation as to its disposition or enjoyment; yet, in stating the history and effect of the various Code sections, on page 476 it is said that the provisions of § 1699 of the Code of 1863, now Code § 30-218, "refer to the grant of alimony where the marriage relation continues or has not been dissolved by a final verdict of divorce." We construe this to be a proper interpretation of the application of this section, and hold that it does not apply where a marriage contract has been dissolved by a final verdict for divorce.

This is not a case where an agreement entered into between the parties to pay a lump sum as permanent alimony was made the judgment of the court, or where the jury awarded specific property out of the husband's estate, as to which see *Melton* v. *Hubbard*, 135 *Ga.* 128 (68 S. E. 1101); *Wise* v. *Wise*, 156 *Ga.* 459 (supra); *Brown* v. *Farkas*, 195 *Ga.* 653 (25 S. E. 2d, 411); *Roberson* v. *Roberson*, 199 *Ga.* 627 (4) (34 S. E. 2d, 836); *Green* v. *Starling*, 203 *Ga.* 10 (45 S. E. 2d, 188).

Accordingly, the trial court, in passing upon all questions of law and fact without a jury, was authorized to find that the liability for the monthly payment of permanent alimony, so long as the wife remained unmarried, terminated upon the death of the husband.

■ The second question for decision is whether the United States Bonds purchased by Doctor Berry during his lifetime, and made payable to himself or two of his sons as co-owners, are

chargeable against their respective shares in his estate as advancements.

A demurrer was filed by the guardian of Donald W. Berry and Charles D. Berry, on the ground that the petitioner alleges that the bonds now held by defendant as guardian were never delivered to the sons by their father during his lifetime, and that being taken as true, is an admission on the part of the petitioner that the bonds are not advancements, because in order to constitute an advancement there must be a delivery unconditionally by the parent to the child before his death with the intention of making an advancement, and it must be accepted by the child as an advancement during the parent's life.

The judgment, while overruling the demurrer, contained the statement, "but the question involved, as to whether or not the facts alleged were or were not advancements, is not decided until further proofs are had, at which time the court will consider further argument in connection with the allegations of the petition." In the circumstances set forth, the only adjudication that became the law of the case was that the demurrer was overruled subject to the right of the trial court, after further proofs and argument, to decide whether the facts alleged constituted advancements.

Counsel for the plaintiffs in error rely upon the provisions of Code § 113-1013, that "An advancement is any provision made by a parent out of his estate, for and accepted by a child, either in money or property, during his lifetime, over and above the obligation of the parent for maintenance and education."

"Where money or property is transferred by a parent to his child, and is accepted, the question of whether the transfer is to be treated as an advancement depends upon the intention of the parent at the time of the transaction, without regard to concurrence on the part of the child." *Barron* v. *Barron*, 181 *Ga.* 505 (2) (182 S. E. 851); *Treadwell* v. *Everett*, 185 *Ga.* 454 (1) (195 S. E. 762); *Kaylor* v. *Kaylor*, 199 *Ga.* 516 (4) (35 S. E. 2d, 1).

The case of *Knight* v. *Wingate*, 205 *Ga.* 133 (52 S. E. 2d, 604) did not involve the question of whether the bonds should be treated as advancements. However, counsel for the administrator in that case, relying upon the law of gifts contained in

the Code, §§ 48-101, 48-102, and 48-103, which require delivery by the donor, acceptance by the donee, and surrender of dominion by the donor to the donee, insisted that, since no gift was completed by the decedent, the property remained his and was a part of his estate; also that the authorization of the wife as co-owner to collect, and the obligation of the United States to pay, did not purport to convey and could not have had the effect of conveying title to the proceeds in the wife contrary to the law of this State defining a gift. The father in the present case, just as the husband in the *Knight* case, purchased the bonds from the United States Government, paid the consideration therefor, and directed that they be conveyed to himself and his sons as co-owners. This was done under the law that conferred equal authority upon such co-owners to collect while in life, and upon the survivor alone to collect the same. The bonds are indisputably contracts in which the United States Government is made the promisor and the father and his sons are made the promisees. In the *Knight* case, just as in the case here, the obligor was bound by the terms of the contract to pay to the co-owner the full proceeds of the contract. As stated in the *Knight* case (p. 140): "True the bonds here in question were not conveyed outright to the wife, but certainly an interest therein, which is clearly defined by the terms of the bonds and law under which they are issued, is conveyed to the wife. . . In virtue of the contractual relationship created by the issuance of the bonds, the Government assumed a duty to each of the co-owners to pay the proceeds thereof to such co-owners according to the terms of that contract, one of the terms being that when Mr. Knight, a co-owner, died and Mrs. Knight, a co-owner, survived him, the full proceeds would be paid to Mrs. Knight." In reaching the above conclusion it was said: "The provisions of our Code, §§ 48-101, 48-102 and 48-103, are not inflexibly confined to requiring physical delivery by the donor, acceptance by the donee, and surrender of dominion to the donee." The plaintiffs in error here find no fault with the decision holding that title to the proceeds of the bonds vested in the surviving co-owner, over the insistence that there had been no acceptance by the co-owner, or delivery of the bonds, or surrender of dominion to the co-owner, but at the same time

contend that, in so far as an advancement is concerned, there was no acceptance by the co-owner. To sustain this contention it would be necessary to overrule the decision in *Knight* v. *Wingate*, supra. See also *Holliday* v. *Wingfield*, 59 *Ga.* 206, where this court, in dealing with the question of acceptance, said: "These words do not mean that the child must formally accept the provision as an advancement; that the parent must say to the child, 'Now, I give you this as an advancement,' and the child respond, 'I accept it as such.' The meaning. is, that the child must receive the provision, get the property or money in possession, and in that sense accept it, take it, keep it."

It follows that, under the uncontradicted evidence to the effect that Dr. Berry purchased the bonds in carrying out his intention to give each of his sons $5000 in bonds to be used in obtaining a college education, or to set them up in business, the trial court, in passing upon all questions of law and fact without a jury, was authorized to find that the United States War Savings Bonds, in which the father and two of his sons were named as co-owners, were intended as advancements, and that the sons should be required to account for the same in the distribution of their father's estate.

*Judgment affirmed. All the Justices concur, except Candler, J., who dissents from the first division of the opinion and from the judgment of affirmance, Hawkins, J., who dissents from the rulings in both divisions of the opinion and from the judgment of affirmance, and Almand, J., who dissents from the second division of the opinion and from the judgment of affirmance. Atkinson, P. J., concurs specially.*

ATKINSON, Presiding Justice, concurring specially. Were there an issue here as to the right of the sons to the entire proceeds of the bonds, I would dissent in part to the ruling as to the ownership of the bonds. There being none, I concur specially in so far as the above ruling relates to the question of advancements. I dissented from the ruling in *Knight* v. *Wingate*, 205 *Ga.* 133, though my reason therefor was not stated. It is my opinion that, under the Federal act in question, where bonds are issued jointly to two people, ordinarily it is a joint ownership and should be so considered in the absence of anything to show otherwise. Under the facts there, which showed

no gift under Code §§ 48-101, 48-102, and 48-103, by the husband to the wife of his interest therein, I do not think that the wife, upon his death, became the sole owner of the bonds. Her right to collect the proceeds after his death was nothing more than a contract with the Federal Government, made for its convenience and for the convenience of the husband and wife. The agreement to pay the amount of the bonds, in the event of the death of either, to the survivor, could have no legal significance other than to eliminate the legal formalities incident to the collection being made by a personal representative of either. The contract did not have the effect of conveying such title as the husband had in the bonds at the time of his death to the wife, but such title as he had in the bonds became a part of his estate and applied to any proceeds subsequently collected therefrom.

Under the facts in the instant case, I think that whatever interests the sons had in the bonds were received by them as advancements.

HAWKINS, Justice, dissenting. I dissent from the ruling made in the first headnote and corresponding division of the opinion. Code § 30-201 provides: "Alimony is an allowance out of the husband's estate, made for the support of the wife when living separate from him. It is either temporary or permanent." By Code § 30-209 it is provided: "The jury rendering the final verdict in a divorce suit may provide permanent alimony for the wife, either from the corpus of the estate or otherwise, according to the condition of the husband," and § 30-210 is as follows: "Permanent alimony shall be granted in the following cases: 1. In cases of divorce, as considered in Chapter 30-1. 2. In cases of voluntary separation. 3. Where the wife, against her will, shall either be abandoned or driven off by her husband." Under these Code sections, which must be construed together, alimony allowed to the wife, whether to be paid in monthly instalments, in a lump sum, or in specific property, is a charge against the husband's estate, and his estate is not relieved from payment thereof merely because the decree provides that the permanent alimony should be paid in monthly instalments. This court has held that a provision for permanent alimony bars the

wife's right to dower and year's support. *Harris* v. *Davis*, 115 *Ga.* 950 (2) (42 S. E. 266). It would be inequitable and unjust to deprive the wife of the right of inheritance, dower, and year's support by reason of an award of permanent alimony, and then to deprive her of the permanent alimony upon the death of her husband, in the teeth of the statute, Code § 30-218, which provides that, "After permanent alimony shall be granted, upon the death of the husband the wife shall not be entitled to any further interest in his estate in her right as wife, but such permanent provision shall be continued to her, or a portion of the estate equivalent thereto shall be set apart to her." In *Wise* v. *Wise*, 156 *Ga.* 459 (119 S. E. 410), the question for decision was whether the wife acquired absolute title or only a life estate in the property awarded as alimony, and, after referring to the above-quoted Code section, this court at page 476 said: "Whether or not these provisions could be applied in the case of a grant of permanent alimony where a total divorce is granted, they are not sufficient to require a different construction than that hereinbefore given to the Code of 1863, §§ 1676, 1677, 1678; which in the Civil Code of 1910 are §§ 2954, 2955, 2956." This is not a ruling that the Code section referred to has no application to the award of alimony in a divorce case. As pointed out in that case (page 475), the object of the law providing for alimony "is support of the wife." The very object of the law is thwarted by the majority opinion, and the former wife in this case—who by the decree of the court is entitled to permanent alimony against the husband— is deprived of that support which the law and the decree of court provides for her, simply because that support is made payable in monthly installments instead of in a lump sum or in specific property. There is neither law, reason, nor logic to support such a conclusion. The decree for alimony, "an allowance out of the husband's estate," although payable in monthly installments, was rendered during the lifetime of the husband. It was final, unexcepted to, and in force at the time of his death. In no other instance of which I am aware is a final and solemn judgment of a court of competent jurisdiction granting a money judgment against a person discharged by the death of such person, if he leaves an estate out of which

it may be collected. For these reasons I cannot concur in the first division of the opinion. See, in this connection, *Smythe* v. *Banks*, 73 *Ga.* 303. I am authorized to say that Mr. Justice Candler concurs in this portion of this dissent.

Nor can I concur in the second division of the opinion, for in my opinion the purchase by the father of the bonds, which were payable to the father or to the sons, but which were never surrendered by the father to the sons during the lifetime of the father, did not constitute "advancements" to the sons within the meaning of the Code § 113-1013, requiring the sons to account therefor in the distribution of the estate of their deceased father. Mr. Justice Almand concurs in this dissent as to the second division of the opinion.

The judgment in this case was affirmed on July 9, 1951. On July 24, 1951, after further consideration of the case on the court's own motion, the judgment remained affirmed.