## 𝔖taunton

RHEA D. FOSTER v. GERTRUDE D. FOSTER, EXECUTRIX, &C.

September 10, 1953.

Record No. 4102.

Present, All the Justices.

The opinion states the case.

*James G. Martin & Sons,* for the plaintiff in error.

*Samuel Goldblatt* and *Paul M. Lipkin,* for the defendant in error.

WHITTLE, J., delivered the opinion of the court.

Rhea D. Foster filed a motion for judgment in the Circuit Court of the City of Norfolk against Gertrude D. Foster, executrix of the estate of Hugh Foster, deceased. The object of the suit was the recovery of alimony allegedly due the plaintiff under a decree of that court, entered on February 12, 1930, by which the plaintiff had been granted a divorce *a vinculo matrimonii* from Hugh Foster.

The decree contained the following provision: "The court doth further adjudge, order and decree that the defendant (Hugh Foster) pay to the plaintiff $125.00 each month for alimony until her death or remarriage, in either of which events said payments shall cease and no longer be a charge against defendant."

Hugh Foster died in January, 1952, and all alimony due to the time of his death had been paid. The motion for judgment alleged that no payments had been made since Foster's death, and judgment was sought in the sum of $1,125, representing nine monthly payments from January, 1952, through September, 1952, the date of the suit.

The executrix filed a demurrer asserting that the said motion for judgment showed that the deceased, Hugh Foster, had paid plaintiff what was due her through December, 1951, and died in January, 1952, which death caused further alimony to cease.

The Circuit Court of the City of Norfolk sustained the demurrer and dismissed the suit, to which ruling we granted the plaintiff a writ of error.

While three assignments of error are relied upon by the plaintiff, she admits that they involve the same question, that is, whether or not the payments decreed continued after the death of Hugh Foster until altered by decree, or

by death or remarriage of petitioner. Plaintiff contends that "said decree intended the payments should continue until her death or remarriage, even if said Hugh Foster sooner died."

The executrix, on the other hand, contends that, in the absence of a stipulation or contract, payments of alimony decreed in connection with an absolute divorce terminate upon the husband's death. She further contends that the language of the decree terminating alimony upon plaintiff's death or remarriage was mere surplusage, and that no inference is to be drawn therefrom that the court intended by implication to extend the payments beyond the death of the husband.

It will be observed that the instant case is not one involving an agreement between husband and wife whereby the husband binds himself to make his wife monthly payments so long as she may live, and continuing after his death. While a husband and wife cannot lawfully agree to a divorce, it is well settled that a husband may bind himself to pay his wife agreed sums, payable at intervals, extending beyond his death. And such a stipulation or contract may be embodied in the divorce decree if equitable and approved by the court. Va. Code, 1950, § 20-109; *Storey* v. *Storey*, 125 Ill. 608, 18 N. E. 329, 8 Am. S. R. 417, 1 L. R. A. 320; *Wilson* v. *Hinman*, 182 N. Y. 408, 75 N. E. 236, 2 L. R. A. (N. S.) 232; *Stratton* v. *Stratton*, 77 Maine 373, 52 Am. Rep. 779; 2 Nelson on Divorce and Annulment (2nd ed.), § 14.63, note 33.

We are here concerned with alimony provisions contained in a decree for divorce *a vinculo matrimonii,* where the sole liability of the husband to his former wife springs from the decree. The case must be distinguished from that of temporary alimony or support money decreed to be paid during the pendency of the suit, or of an *a mensa* divorce, where the decree merely enforces the duty still existing on the part of the husband to support his wife.

Statutes authorizing the Virginia courts to grant *a mensa* divorces are declaratory of the common law. Divorces *a*

*vinculo,* on the other hand, are wholly creatures of statute. *Eaton* v. *Davis,* 176 Va. 330, 337, 338, 10 S. E. (2d) 893.

■ The basic question to be answered in the instant case is whether a court of chancery in Virginia, in entering a decree for a divorce *a vinculo matrimonii,* has the power, in the absence of any stipulation or contract between the parties, to extend alimony payments beyond the death of the husband. Our conclusion is that the court has no such power.

Section 20-107, Code, 1950, provides, *inter alia:* "Upon decreeing the dissolution of a marriage, * * * from the bond of matrimony * * * the court may make such further decree as it shall deem expedient concerning the estate and the maintenance of the parties, or either of them, * * * ."

Section 20-108 provides that upon petition the court may from time to time change its decree regarding the custody and support of children.

Section 20-109 provides that "upon petition of either party the court may increase, decrease or cause to cease, any alimony that may thereafter accrue, * * * as the circumstances may make proper; provided, however, if a stipulation or contract signed by the party to whom such relief might otherwise be awarded is filed with the pleadings or depositions, then no decree or order directing the payment of alimony, suit money, or counsel fee shall be entered except in accordance with that stipulation or contract unless such party raise objection thereto prior to entry of the decree."

Section 20-110 provides: "If any person to whom alimony has been awarded shall thereafter marry, such alimony shall cease as of the date of such marriage."

These statutory provisions, §§ 20-107 through 20-110, *supra,* were contained in the code of 1919 as section 5111. It will be observed that the statutes nowhere provide that alimony may extend beyond the joint lives of the parties, in the absence of a stipulation or contract between them.

It was said by Judge Staples in *Francis* v. *Francis*, 31 Gratt. (72 Va.) 283, 290, "Alimony is a proportion of the husband's estate allowed to the wife for her maintenance and support during the period of their separation, and only continues with their joint lives. It ceases with the death of either of the parties. 2 Bishop on Marriage and Divorce, § 350."

Chapter CV, page 850, Code of 1873, dealing with "Divorces", was in force and effect at the time of the decision in the *Francis Case*. Neither this chapter nor any statute since enacted by the legislature of Virginia (and there have been many amendments and new sections added since 1873) has expressly given our courts discretion to extend alimony payments after the death of the husband.

Section 20-110, Code of 1950, *supra*, provides, as aforesaid, that *marriage* stops the payment of alimony. Until the enactment of this statute it was not clear whether or not such payments were stopped by marriage. It is significant that the Code contains no analogous section providing that *death* stops alimony. The *Francis Case* decided in unmistakable language that alimony does not extend beyond the "joint lives" of the parties, and the legislature has made no attempt to change this established rule.

In 2 Bishop on Marriage, Divorce and Separation (1891), § 858, p. 349, it is said: "The death of either of the parties dissolves the marriage. Therefore as already stated, there can be no common law alimony when either the husband or wife is dead. But in some of the States there are statutes permitting it during the wife's life, and so creating a liability on the deceased husband's estate." Citing *Smythe* v. *Banks*, 73 Ga. 303; *Storey* v. *Storey, supra; Cf. Berry* v. *Berry*, 208 Ga. 285, 66 S. E. (2d) 336 (1951).

In section 846 of the same volume (2 Bishop on Marriage, etc.), this is said: "By the unwritten rule, alimony cannot be ordered for the term of the wife's life, so whatever the form of the decree, it ends when the husband dies; because it is a maintenance to her, while his duty to maintain her ceases at his death."

In American Jurisprudence it is stated: "According to the weight of authority, a decree, granted in connection with an absolute divorce, for the regular periodical payments of alimony to the wife for her maintenance and support is terminated upon the husband's death, in the absence, at least, of some stipulation in the order which would require payments after his death." 17 Am. Jur., Divorce and Separation, § 608, p. 473. (See Va. Code, 1950, § 20-109, *supra.*)

"The right to receive alimony, and the corresponding duty to pay it, being personal, are generally considered as terminating on the death of either of the parties, where no statute to the contrary exists and the judgment or decree is silent on the subject. * * * " 27 C. J. S., Divorce, § 240(b), p. 999.

In *Eaton* v. *Davis, supra* (176 Va., at page 340), it is said:

"The material thing which is supplanted by alimony is simply the right of the wife during coverture to support and maintenance * * * . The right * * * is not a property right. * * * It is uncertain in duration, lasting possibly a day, a month, or a year or more. It ceases entirely upon the death of either husband or wife. So much for the wife's right of support during coverture.

"What happens to this right of support when the marriage is dissolved by a final divorce decree? As an incident to the divorce the court substitutes for this support what is termed alimony. * * * They (the payments) are uncertain in duration and cease upon the death of either party."

"The jurisdiction of divorce causes is purely statutory, and the court possesses no powers in such cases involving matters of property beyond those conferred by statute, * * * ." 2 Bishop on Marriage, etc., *supra,* § 1231; *Barnes* v. *American Fertilizer Co.,* 144 Va. 692, 707, 130 S. E. 902; *Ring* v. *Ring,* 185 Va. 269, 277, 38 S. E. (2d) 471, 475, 165 A. L. R. 1237, 1242.

" * * * (W)e think it clear, certainly in the absence of agreement, that the power of the court is limited to the

settlement of those property rights of the parties (dower and curtesy) which have arisen by operation of law out of the marital relation, and the protection of their respective estates." *Barnes* v. *American Fertilizer Co., supra,* 144 Va., at page 709.

We are unwilling, in the absence of clear legislative authority, to change the settled rule in Virginia by extending the payment of alimony after the death of the husband (unless there is a stipulation or contract between the parties). To do so would go far beyond our concept of the meaning of alimony, which contemplates that the husband shall support his wife during his life. The obligation extends no further. This holding is in accord with the clear, established weight of authority in this country.

It is argued by the plaintiff that the reasons assigned by Mr. Justice Buchanan in the case of *Morris* v. *Henry,* 193 Va. 631, 70 S. E. (2d) 417 (1952), apply with equal force here. In the *Morris Case* we permitted the payments for the support of the infant daughter to continue after the death of the father. (The trial court refused to permit alimony payments to the wife to so continue and there was no exception to this ruling.) It was pointed out in the *Morris Case* that the decision there reached was in accord with the clear, established weight of authority. (193 Va., at page 641).

There are well recognized differences between alimony and money decreed in divorce suits for the support and maintenance of infant children. The basic reasons for the two allowances spring from different sources. While the awards become closely associated and are frequently intermingled in divorce decrees, this does not alter the reasons which prompt their creation. The obligation of a parent to support his infant child is not the mere outgrowth of a divorce suit as is alimony, nor is it merely incidental thereto. It is both a social and parental obligation. The ties of marriage may be broken by the decree but the relationship of parent and child cannot be thus severed. "The good of the child is universally deemed to be the leading considera-

tion, to which the claims of all other persons must yield on sufficient pressure; * * * ". 2 Bishop on Marriage, etc., *supra*, § 1161, p. 453.

Furthermore, we cannot agree with plaintiff's contention that the court intended in the instant case to extend the payment of alimony after the death of the husband, wherein its decree ordered alimony to be paid the plaintiff "until her death or remarriage". It is not claimed by plaintiff that payments could in any event extend beyond her death, and Code, § 20-110, *supra*, expressly provides that alimony should cease upon her remarriage. Therefore, the inclusion in the decree of these contingencies had no legal effect and neither enlarged nor limited the obligation of the husband. No intent to exclude the contingency that alimony would be terminated by the husband's death is to be inferred therefrom.

The decree therefore did not expressly or by fair implication direct that alimony should be paid after the death of the husband. *Wilson* v. *Hinman, supra; Brandon* v. *Brandon,* 175 Tenn. 463, 135 S. W. (2d) 929; *Berry* v. *Berry, supra;* 17 Am. Jur., Divorce and Separation, *supra,* § 608, Note 1, page 473.

Even in jurisdictions possessing the statutory authority to extend alimony payments after the death of the husband the decree must clearly express such intention. In such jurisdictions the provision for continuance of payments after death must be specifically stated in the decree or it will be presumed that the payments abate upon the death of either spouse. *Murphy* v. *Shelton,* 183 Wash. 180, 48 P. (2d) 247 (1935); 17 Am. Jur., Divorce and Separation, *supra,* § 611, note 12, p. 477.

For the reasons stated the judgment is

*Affirmed.*

BUCHANAN, J., dissenting in part and concurring in part.

MILLER, J., concurring in result.

BUCHANAN, J., dissenting in part, concurring in part:

I disagree with the holding in this case that a court of chancery in Virginia has no power to extend alimony payments beyond the death of the husband. That holding, in my opinion, places upon the broad and comprehensive language of the statute a limitation not found in its words and not desirable for this court to impose.

Section 20-107 of the Code provides that upon decreeing (1) the dissolution of a marriage, (2) a divorce either from the bond of matrimony or from bed and board, or (3) that neither party is entitled to a divorce, "the court may make such further decree *as it shall deem expedient* concerning the *estate* and the *maintenance* of the parties, or either of them, and the care, custody and maintenance of their minor children, * * ." (Emphasis added).

The power, *i. e.*, the jurisdiction, thus given to the court in connection with divorce and its related problems is described in language about as broad as could be used. The statute says that with respect to the estate and the maintenance, both, the court may enter such decree as it shall deem expedient. Estate is the property the parties own; maintenance is what is required for them to live on; expedient, says Webster, means apt and suitable to the end in view. The end in view in divorce proceedings is to do what is best with a bad situation.

Only last year, in *Morris* v. *Henry*, 193 Va. 631, 70 S. E. (2d) 417, we held that this same statute, section 20-107, authorized a divorce court to decree that payments for the support of a minor daughter should continue after the death of the father. We said there that a denial of that power to a court of equity would in some cases seriously impair its ability to protect the rights and interests of infants; that the death of a father does not end the need of his infant children for food and shelter.

We quoted in that case from *Heninger* v. *Heninger*, 90 Va. 271, 275, 18 S. E. 193, 195, the statement that " 'the evident purpose of the legislature was to give to the court

the largest discretion in respect to the estate of the parties, and not to relieve the offending parent of any duty, moral, social, or otherwise.'" 193 Va. at p. 639, 70 S. E. (2d) at p. 422.

By the same token, the death of a husband does not end the need of his wife for food and shelter. It was said in *Eaton* v. *Davis*, 176 Va. 330, 341, 10 S. E. (2d) 893, 898, with respect to the power of the court to change the amount of alimony, that if the former wife becomes an invalid, she "should not remain an object of uncertain charity, and the equity court should not be prohibited by a final decree for alimony from giving her equitable relief. The right to support and maintenance or alimony is such a varying thing that its ascertainment never should be absolutely final as to future instalments. Absolute inflexibility ought not to obtain."

The majority opinion says there are well recognized differences between alimony for the wife and support for the infant children; but this court recently said in *White* v. *White*, 181 Va. 162, 170, 24 S. E. (2d) 448, 452, that "Alimony and the obligation of a father to support his infant children exists independent of statute." In *Buchanan* v. *Buchanan*, 174 Va. 255, 279, 6 S. E. (2d) 612, 622, we said of the contract there involved that its provisions made for the wife and the children "grew out of the same soil."

The duty of the husband to support his wife is not less than his duty to support their infant children, and the performance of both is a matter of public concern. "A decree for alimony is something more than an order for the payment of money. A husband who has wronged his wife must continue to contribute to her support. A decree for alimony 'is an order compelling a husband to support his wife, and this is a public as well as a marital duty—a moral as well as a legal obligation. *Branch* v. *Branch*, 144 Va. 244, 132 S. E. 303." *Capell* v. *Capell*, 164 Va. 45, 49, 178 S. E. 894, 895. *West* v. *West*, 126 Va. 696, 101 S. E. 876; *Ring* v. *Ring*, 185 Va. 269, 38 S. E. (2d) 471.

A decree for alimony constitutes a lien upon all the real estate of a husband. *Isaacs* v. *Isaacs,* 117 Va. 730, 86 S. E. 105.

But in a decree for alimony, payable in future installments, the court may provide that such payments shall not be a lien on the husband's real estate, or it may designate particular real estate on which it shall be a lien; or subsequently release such a lien for alimony either accrued or to accrue. Code, § 8-388.

Courts of equity have inherent jurisdiction in a proper case to grant alimony independently of statute. *Heflin* v. *Heflin,* 177 Va. 385, 14 S. E. (2d) 317.

If any sort of difference exists, in origin, purpose or duty, between alimony for the wife and support for the children, it seems clear that the statute, section 20-107, makes no distinction between them with respect to the power given to the court to deal with them. As to both the statute says that the court shall make such decree as it shall deem expedient.

Although we held in *Morris* v. *Henry, supra,* that the equity court had power to make the support of the child a charge on the parent's estate, it is now held under the same statute that the same court is without power to make the support of the wife a charge on the husband's estate although the statute in terms applies to both alike.

While the court, so the opinion holds, has no power to make alimony payments extend beyond the death of the husband, regardless of the needs of the wife or the wealth of the husband, yet if the husband is willing to agree voluntarily that this be done, his agreement may be embodied in the decree and approved by the court. Jurisdiction is thus made to depend on the consent of the parties, contrary to the general rule. 11 Mich. Jur., Jurisdiction, § 20, p. 444. Such, it seems to me, ought not to be the state of law. Even though the husband will not agree, the court ought to have the power, and I think the statute gives it the power, to require that the estate of the delinquent husband should be charged with the support of his helpless wife when the cir-

cumstances clearly demand it. We said in *Capell* v. *Capell*, *supra*, 164 Va. at p. 52, 178 S. E. at p. 896, with respect to an agreement which undertook to change the amount of alimony previously provided by a decree, that "because it touches a public as well as a marital duty, jurisdiction cannot be ousted by any agreement of the parties *in pais* which the court itself does not adopt and approve."

In a case of absolute divorce, if alimony payments upon which the wife solely depends for her support stop with the death of the husband, then regardless of the value of the husband's estate she must look to charity for help. She cannot otherwise share in her husband's estate because a decree of divorce from the bond of matrimony extinguishes her marital right in his property. Code, § 20-111.

I do not believe the power to remedy such a situation, which power it seems to me the statute gives to the courts, ought to be rejected. As we said in *Morris* v. *Henry, supra*, of similar power there held to be vested in the courts with respect to the support of children, the possession of it would not result in its being exercised in all cases. The courts of equity could be trusted to use the power only when the necessities of the case and the ends of justice required.

In *Hale* v. *Hale*, 108 W. Va. 337, 150 S. E. 748, the West Virginia court said that the statute of that State, in the same language as our section 20-107, was "of sufficient breadth to warrant a requirement by the trial court that permanent alimony be paid out of a husband's estate after his death, when, in the chancellor's opinion, such course is just and right."

I do not think we are precluded from so holding by what was said in *Francis* v. *Francis*, 72 Va. (31 Gratt.) 283, or *Eaton* v. *Davis, supra*, 176 Va. 330, 10 S. E. (2d) 893. Neither case involved a construction of section 20-107. The *Francis Case* was concerned with the construction of an act to legalize the marriage of colored persons. The husband had been required to make a monthly payment for the support of his wife, but with no attempt to charge his estate. The husband died after the appeal was granted and

the court held that the alimony ceased with his death. The *Eaton Case* involved a question of changing the amount of alimony under what is now section 20-109 of the Code. Neither case deals with the provision of the statute with which we are now concerned, and neither requires it to be said now that under section 20-107 equity is without power to charge a husband's estate with the payment of alimony. Each of those cases merely holds in accord with the general rule thus stated in 27 C. J. S., Divorce, § 240 b, page 999:

"The right to receive alimony, and the corresponding duty to pay it, being personal, are generally considered as terminating on the death of either of the parties, where no statute to the contrary exists and the judgment or decree is silent on the subject."

I agree with that part of the opinion which holds that the decree here was not sufficient to extend the payments beyond the husband's death. Since such a provision is not the usual practice, and when made should be based on circumstances out of the ordinary, the intention to require it should be expressly stated in the decree or be an unmistakable inference from the language used. *Murphy* v. *Shelton*, 183 Wash. 180, 48 P. (2d) 247; 27 C. J. S., *supra*, p. 1000.

MILLER, J., concurring in result:

Less than eighteen months ago, by the opinion in *Morris* v. *Henry*, 193 Va. 631, 70 S. E. (2d) 417, from which I dissented, this court decided that in a divorce suit a court of equity was empowered to decree that after the death of a father, his estate be charged with support of his infant child whose custody was awarded to the mother. In that opinion the power and authority of the court to so decree is said to be derived from section 20-107, Code of 1950. The part of that section material to that decision and to this case now before us is as follows:

"Upon decreeing * * * a divorce * * * from the bond of matrimony * * * the court may make such further decree as it shall deem expedient concerning the estate and

the maintenance of the parties, or either of them, and the care, custody and maintenance of their minor children, * * * "

Though no dissent was written by me in *Morris v. Henry, supra,* it was my view that section 20-107 did not either expressly or by implication confer such broad power upon a court of equity. It is not contended that courts of equity in Virginia enjoyed this power prior to the enactment of the statute relied upon, and had the legislature intended to endow them with such far-reaching authority, it would, I think, have said so in plain and explicit language.

In *Blades v. Szatai,* 151 Md. 644, 135 A. 841, 50 A. L. R. 232, the statute sought to be invoked and relied upon to give such broad authority provided that the court in divorce cases should be empowered to direct "who shall have the guardianship and custody of the children and be charged with their support and maintenance, and may at any time thereafter annul, vary or modify such order in relation to the children." In deciding that liability for support of children could not be imposed upon the father's estate after his death, the court said that the quoted language indicated that the lawmakers "had in mind and were dealing with living individuals, and not with estates of decedents * * * " and "it would be an unwarranted assumption of the legislative intent to put such a construction upon the language * * * " as to charge the estate of the deceased father with support of any one or more of his children.

In the opinion rendered today in the case now before us, the language in section 20-107 which was said to empower the court to decree that payments be made for support of an infant child out of the father's estate after the father's death is held insufficient to empower the court to do so as to alimony for the divorced wife. I agree that the statute (section 20-107) does not authorize the court to decree the accrual and payment of alimony out of the husband's estate after his death. That, I think, should have also been held in *Morris v. Henry, supra,* with regard to

the court's power to decree payment of support money for an infant child after its father's death. Thus, I think the two opinions are to that extent in conflict. They split the statute, and I am confident that the legislature intended no such result. I do not agree with that part of the court's opinion in this case that re-affirms the decision in *Morris* v. *Henry, supra.*

My conclusion is that the legislature did not by section 20-107 intend such far-reaching consequences as to empower the court to impose liability upon the estate of the deceased ex-husband for alimony or upon the estate of the deceased father for support. Long established principles or courses of the law should not be changed by close, nice and conflicting judicial interpretation. That should be left to the legislature and be accomplished by definite and reasonably certain legislation.