COURT OF APPEALS OF VIRGINIA


Before:    Judges Haley, Beales and Alston
Argued at Alexandria, Virginia


CHEYEP NKOPCHIEU

                                                            OPINION BY
v.        Record No. 0500-11-4          JUDGE RANDOLPH A. BEALES
                                                       DECEMBER 20, 2011

RAYMOND BERNARD MINLEND


             FROM THE CIRCUIT COURT OF THE CITY OF ALEXANDRIA
                            Nolan B. Dawkins, Judge

             Carolyn M. Grimes (Jessica L. Leischner; Lieblich & Grimes, P.C.,
             on brief), for appellant.

             No brief or argument for appellee.


        In this domestic relations proceeding, the circuit court in its final order of divorce denied

a motion by Cheyep Nkopchieu (mother) to enter a qualified domestic relations order (QDRO)

permitting her to attach a retirement account belonging to Raymond Bernard Minlend (father) for

the sole purpose of paying father's very considerable child support arrearage of over $28,000.

On appeal, we hold that the circuit court committed reversible error when it found that it was

constrained by this Court's decision in Hoy v. Hoy, 29 Va. App. 115, 510 S.E.2d 253 (1999).

        The record on appeal establishes that father has completely ignored and frustrated the

trial court's child support orders – and that mother's only means of obtaining the necessary child

support for the parties' two children is through attaching father's retirement account.  We find

that neither Hoy nor any other provision of Virginia domestic relations law deprived the circuit

court of authority to enter a QDRO pursuant to the procedures of the federal Employee

Retirement Income Security Act (ERISA).  Therefore, we reverse the portion of the circuit

court's final order of divorce denying mother's motion for entry of a QDRO and remand the matter to the circuit court for further proceedings consistent with this opinion.

## I. BACKGROUND

Mother and father were married in Virginia on February 23, 2009, approximately eleven months after the birth of their first child. They separated on or about December 15, 2009, while mother was pregnant with their second child, who was born on April 13, 2010.

Father filed a complaint for a divorce on February 25, 2010, and mother filed a cross-complaint for a divorce seeking *pendente lite* child support. In its April 16, 2010 *pendente lite* order, the trial court ordered father to make monthly child support payments in the amount of $2,000. Because the trial court determined that there was already a child support arrearage of $9,000, it ordered father to pay an additional $500 per month to begin satisfying this child support arrearage.

Father never made *any* of these child support payments ordered by the trial court. In fact, at some point in the divorce proceedings, father actually left the United States – and there is no indication from the record on appeal that he has ever returned to this country.[1] Therefore, during the pendency of the divorce proceedings, the arrearage created by father's failure to make any child support payments continued to grow considerably.

Mother filed a written motion for the entry of a QDRO on January 13, 2011,[2] when father's child support arrearage had grown to almost $28,000. Mother asserted: (a) that father had not appeared at any of the hearings in the trial court; (b) that father had left the country and

---

[1] The trial court record includes an April 29, 2010 email from father to his trial counsel indicating that father would remain in Cameroon indefinitely due to "nerve issues or complications from malaria or something else." This is the last indication from the record concerning father's whereabouts.

[2] This was actually mother's second written motion for the entry of a QDRO in this case. Mother's first motion for a QDRO, filed on July 21, 2010, was summarily denied by the trial court.

was "not likely to return"; (c) that mother had not had any contact with father either "directly or through counsel"; (d) that father "was the sole income earner for the family prior to and during the marriage," leaving mother with essentially no assets; (e) that mother and the parties' two children had been forced to rely on charity and public assistance; and (f) that father's retirement account with his Virginia employer was "the only asset" of father's that mother knew of that could be used to pay the father's unpaid child support obligation. Mother contended that ERISA gives "state courts the authority to enter QDROs assigning retirement benefits to an alternate payee for the purpose of garnishing a retirement account to enforce payment" of a child support arrearage. See 29 U.S.C. § 1056(d)(3)(K) (defining an "alternate payee" under ERISA as "any spouse, former spouse, child, or other dependent of a participant who is recognized by a domestic relations order as having a right to receive all, or a portion of, the benefits payable under a plan with respect to such participant"); see also 29 U.S.C. § 1056(d)(3)(J) ("A person who is an alternate payee under a qualified domestic relations order shall be considered for purposes of any provision of this Act a beneficiary under the plan.").

During the divorce trial on January 21, 2011, father's counsel argued that the trial court lacked authority to enter the QDRO that mother sought. Father's counsel relied on Hoy, 29 Va. App. at 119, 510 S.E.2d at 255, where this Court held that a litigant's claim as a judgment creditor against her former spouse for unpaid spousal support could not be "recast" into an appropriate circumstance for entering a QDRO. In response, mother's counsel noted that Hoy involved an attempt to re-open a divorce case that already had been final for over two decades – in order to enter a QDRO attaching a retirement account that did not even exist at the time of the Hoys' divorce. Thus, mother's counsel argued that this Court's decision in Hoy did not affect the trial court's authority *in this case* "to assign a portion of the income" from father's retirement account "to an alternate payee" for the payment of unpaid child support.

Father's counsel also argued at the hearing in the trial court that a QDRO could not be entered because mother had expressly disavowed any property interest in husband's retirement account assets in the parties' premarital agreement.[3]  In response, mother's counsel argued:

> What we are asking the Court to do is to enter a qualified domestic relations order pursuant to ERISA to allow Ms. Nkopchieu to essentially garnish Mr. Minlend's retirement account, which is an asset, for the purpose of paying unpaid support.  The Court's authority to do this stems specifically from the federal law in ERISA, which allows for the Court to enter a QDRO for two separate purposes.
>
> The Court is permitted to enter the QDRO as it relates to property division, which is what we would be doing in equitable distribution, which we are not in dispute that that is not before the Court today.  *We are not saying she has a property interest in his retirement account, as it relates to a property division.*  What we are saying is the other purpose of the QDRO, as it relates to ERISA in saying that the Court may enter a QDRO for the purpose of enforcing its child support or spousal support orders.

(Emphasis added).  Mother's counsel then reiterated that mother was not seeking to create a personal "right or an interest" in father's retirement account.

In its final order of divorce, the trial court awarded mother sole legal and physical custody over the two children and increased father's monthly child support obligation to $2,035.  The trial court found that father's child support arrearage had grown to $28,106.66 and ordered father "to pay this amount in full immediately."  However, the trial court denied mother's motion

---

[3] The premarital agreement provides, "In regard to retirement plans and accounts, the parties covenant and agree that all accumulations in, and contributions to, retirement plans and accounts whether before or during the marriage shall be the Separate Property of the party who owns the account or is the plan beneficiary."  However, this portion of the premarital agreement is irrelevant to the issue on appeal because this appeal simply does not concern the equitable distribution provisions of Code § 20-107.3.  This appeal concerns mother's attempt to satisfy father's unpaid child support obligation, and the premarital agreement plainly states, "Nothing in this agreement shall be construed as relieving either party of an obligation to support their minor children."  Furthermore, as the Supreme Court explained in Kelley v. Kelley, 248 Va. 295, 298, 449 S.E.2d 55, 56 (1994), "[P]arents cannot contract away their children's rights to support nor can a court be precluded by agreement from exercising its power to decree child support."

for the entry of a QDRO to satisfy the child support arrearage – finding that it was "bound by the Court of Appeals' decision" in Hoy.

## II. ANALYSIS

On appeal, mother emphasizes (as she emphasized in the trial court) that she does not seek any *personal* interest in father's retirement assets – and that the parties' premarital agreement bars any such a claim. However, the premarital agreement also states, "Nothing in this agreement shall be construed as limiting the right of either party to make claims for child support." Mother contends that she is actually pursuing a claim of unpaid child support for her infant children. Mother asserts that she seeks a QDRO *only* in her capacity as the parent with sole legal and physical custody of the parties' children, and, therefore, as the children's guardian.

Given mother's position here, the fact that the parties were married (and are now divorced) is simply irrelevant. Mother could have made precisely the same request for the entry of a QDRO *even if the parties had never married.* This is because mother seeks to vindicate *the children's rights* to child support – not any property rights mother herself might have that resulted from the marriage with father.

In Commonwealth *ex rel.* Gray v. Johnson, 7 Va. App. 614, 622, 376 S.E.2d 787, 791 (1989), this Court noted, "An actual distinction rests in the right to child support." This Court explained:

> [T]he duty of support of all children is owed to the child, not the mother. The amount of the support is based primarily on the needs of the child and the ability of the father to provide, not the needs of the mother. Thus, the mother does not have the same legal right of the child in seeking child support; rather, *the right is solely that of the child.* The mother simply has the right to act as a conduit for the payments of support to the child.[4]

Id. (emphasis added).

---

[4] These principles also apply, of course, in cases where a father acts as a conduit for the payments of support to the child.

Acting solely "as a conduit for the payments of support" to the parties' children, id., mother seeks the entry of a QDRO in this case. She argues that ERISA and Virginia's laws pertaining to domestic relations would permit the entry of a QDRO under the specific circumstances of this case. Mother "presents an issue of law, which we review *de novo*." Ahari v. Morrison, 275 Va. 92, 95, 654 S.E.2d 891, 893 (2008).

## A. ERISA'S REQUIREMENTS FOR THE ENTRY OF QDROS

Under ERISA, the funds of an employee benefit plan (such as father's retirement account with his Virginia employer) generally "may not be assigned or alienated."[5] 29 U.S.C. § 1056(d)(1). However, this general prohibition against the assignment or alienation of employee retirement benefits does not apply when a state domestic relations order "is determined to be a qualified domestic relations order." 29 U.S.C. § 1056(d)(3); see Wilson v. Wilson, 18 Va. App. 193, 200, 442 S.E.2d 694, 698 (1994) ("Under federal law, qualified domestic relations orders are an exception to ERISA's proscription against alienation and assignment of pension benefits."). ERISA states that "[e]ach pension plan shall provide for the payment of benefits in accordance with the applicable requirements of any qualified domestic relations order." 29 U.S.C. § 1056(d)(3).

According to 29 U.S.C. § 1056(d)(3)(B)(i), a "qualified domestic relations order" is a domestic relations order (I) "which creates or recognizes the existence of an alternate payee's right to, *or assigns to an alternate payee the right to*, receive all or a portion of the benefits payable with respect to a participant under a plan," and (II) which meets all of the technical requirements of "subparagraphs (C) and (D)" of 29 U.S.C. § 1056(d)(3). (Emphasis added).

---

[5] For the purposes of ERISA, the United States Supreme Court has noted that "to 'assign' is '[t]o transfer; as to assign property, or some interest therein,' Black's Law Dictionary 152 (4th rev. ed. 1968), and to 'alienate' is '[t]o convey; to transfer the title to property, id. at 96." Kennedy v. Plan Adm'r for DuPont Sav. & Inv. Plan, 555 U.S. 285, 292 (2009).

ERISA further defines the term "domestic relations order" as "any judgment, decree, or order" that:

> (I) *relates to the provision of child support*, alimony payments, or marital property rights to a spouse, former spouse, child, or other dependent of a participant, and
>
> (II) *is made pursuant to a State domestic relations law* (including a community property law).

29 U.S.C. § 1056(d)(3)(B)(ii) (emphasis added).

Under ERISA, the children of retirement plan participants can become plan beneficiaries and alternate payees of the plan through the entry of a QDRO. See Boggs v. Boggs, 520 U.S. 833, 847 (1997). The United States Supreme Court explained in Boggs that one of the "central purposes" of the 1984 amendments to ERISA that created the "QDRO mechanism" was to "give enhanced protection" to plan beneficiaries such as "dependent children in the event of divorce or separation . . . ." Id.

Therefore, under ERISA and the United States Supreme Court's explanation of that Act's purpose, the minor children of the parties in this case certainly can be listed as beneficiaries and alternate payees of the retirement account (through mother, as their guardian) in a QDRO. See 29 U.S.C. § 1056(d)(3)(B)(i)(I). Furthermore, mother's request for a QDRO "relates to the provision of child support," and, therefore, satisfies another of ERISA's conditions for the entry of a QDRO. See 29 U.S.C. § 1056(d)(3)(B)(ii)(I).

However, the trial court never considered whether mother's draft QDRO satisfied ERISA's technical requirements for the entry of a QDRO. See 29 U.S.C. § 1056(d)(3)(C) and 1056(d)(3)(D). The trial court found that it was constrained by this Court's decision in Hoy – and, therefore, that it could not enter a QDRO pursuant to Virginia's domestic relations law. We disagree with the reasoning and conclusion of the trial court.

## B. THE DECISION IN <u>HOY</u> DOES NOT APPLY TO THE VERY DIFFERENT CIRCUMSTANCES IN THIS CASE

Characterizing it as a "defining case" in Virginia domestic relations law, father's counsel asserted in the trial court that <u>Hoy</u> established that a QDRO simply cannot be entered in Virginia to enforce a spousal support or child support arrearage in order to attach or garnish assets in a retirement account. The trial court accepted this argument and found it was constrained by this Court's decision in <u>Hoy</u>. However, the decision in <u>Hoy</u> simply is not controlling on the very different facts, circumstances, and interests that are presented in this case.

In <u>Hoy</u>, when the parties (Pearce and Hoy) divorced in 1973, Pearce was awarded spousal support. Pearce was not awarded any interest in Hoy's retirement plan – and Pearce could not possibly have received such an award, given that Hoy's retirement plan did not even exist at the time of the divorce. Pearce later received an $84,000 judgment for spousal support arrearages. In 1997 – nearly a quarter-century after the entry of the final divorce decree – Pearce moved the trial court "to reinstate" the divorce case "for entry of a QDRO allowing garnishment of Hoy's pension plan as a source for payment of the spousal support arrearages judgment." <u>Hoy</u>, 29 Va. App. at 118, 510 S.E.2d at 254.

This Court affirmed the trial court's denial of Pearce's motion, holding that Pearce's "attempt to reopen and modify the court's final decree of divorce" was prohibited by Rule 1:1. <u>Id.</u> at 118, 510 S.E.2d at 254-55. This Court noted that the final divorce decree predated the effective date of the continuing jurisdiction statute, Code § 20-107.3(K)(4). <u>Id.</u> at 118, 510 S.E.2d at 255. This Court also explained that Code § 20-107.3(K)(4) would not have provided Pearce any relief because the trial court was not permitted to make any substantive modification of the parties' divorce decree or to provide Pearce with an interest in Hoy's retirement plan that was not already recognized in the divorce decree. <u>Id.</u> at 118-19, 510 S.E.2d at 255. Given those circumstances, this Court held:

> Under Virginia domestic relations law, Pearce may not recast her claim as a judgment creditor, albeit one that seeks recovery of unpaid spousal support, into a QDRO which substantively modifies the terms of a final divorce decree. Therefore, under ERISA, the proposed order does not qualify as a QDRO.

Id. at 119, 510 S.E.2d at 255.

This case is very different than Hoy. Here, mother sought the entry of a QDRO for child support *while the divorce proceedings were active.* This issue was argued extensively by the parties in the trial court, and the trial court then denied mother's motion for the entry of a QDRO in its final order. Thus, unlike in Hoy, mother here certainly does not seek to reopen and substantively modify the terms of a final divorce decree. This difference alone brings this case completely outside of the scope of this Court's holding in Hoy. Therefore, the trial court erred when it found that it lacked authority under Hoy to enter a QDRO in this case.

### C. THE TRIAL COURT HAD AUTHORITY TO ENFORCE FATHER'S DUTY TO SUPPORT HIS MINOR CHILDREN

In addition, this case concerns a parent's duty to support his minor *children*. As the Supreme Court explained in Kelley v. Kelley, 248 Va. 295, 298, 449 S.E.2d 55, 56 (1994), "Both parents owe a duty of support to their minor children." Thus, the rights of children to receive "support from both parents" may not be "substantially abridged" by the actions of either or both parents. Id. This principle is consistent with Virginia's "strong and compelling interest in protecting the welfare of its dependent citizens." Caswell v. Lang, 757 F.2d 608, 610 (4th Cir. 1985) (citing Code § 20-107.2).

In this case, ever since the beginning of the divorce proceedings (which father initiated), father has completely ignored this paramount duty to support the parties' children – and has completely frustrated the trial court's orders directing him to pay child support. According to the record on appeal, father has not paid one dime of child support since the parties separated in December 2009. Father even left the country during the middle of the divorce proceedings –

and, therefore, apparently has ceased earning wages from his Virginia employer that mother could seek to garnish.  See Code § 20-79.1.  Mother also knows of no other property belonging to father, such as real estate, that could be the subject of a lien for failure to pay child support.  See Code § 8.01-460(A).  Meanwhile, according to mother, she and the parties' two young children are forced to rely on charity and public assistance.  By ignoring his obligation to support his own small children, father has left the children in a desperate plight.

Father's counsel argued in the trial court that the entry of a QDRO would be inappropriate here because "Congress has an interest in protecting these sort of retirement accounts" in order "to allow some form of support or income to folks once they retire, so the state is not burdened with that."  Although "[i]t is perhaps true that the [ERISA] statutory scheme is designed for the protection of retirement income," In re Marriage of Rife, 529 N.W.2d 280, 281 (Iowa 1995), this argument presents a very incomplete picture of the law.  ERISA specifically permits the parties' minor children to qualify as beneficiaries and alternate payees of father's retirement plan.  See 29 U.S.C. § 1056(d)(3)(K) and 1056(d)(3)(J).

The United States Supreme Court explained in Boggs that ERISA now provides "enhanced protection" to dependent children "in the event of divorce or separation" by authorizing a trial court to enter a QDRO.  Boggs, 520 U.S. at 846.  Commenting on the proper balance between the protection of retirement assets and the state's authority to enforce the plan participant's domestic obligations, the Colorado Court of Appeals has noted, "The provisions creating a QDRO evince the overall congressional purpose to protect persons and their dependents from the claims of creditors while, at the same time, *preventing interference with the state's power to enforce family support obligations.*"  In re LeBlanc, 944 P.2d 686, 688 (Col. Ct. App. 1997) (emphasis added).  Similarly, the Iowa Supreme Court has held, "ERISA was not

intended to be a vehicle for avoidance of familial support" duties or obligations. In re Marriage of Rife, 529 N.W.2d at 282.

Simply put, to use ERISA's *general* rule against assigning or alienating retirement assets as a way to permit father to continue to avoid his duty to pay child support would completely thwart Virginia's established principles of domestic relations law, especially the law dealing with child support. Code § 20-107.2 states:

> Upon entry of a decree providing (i) for the dissolution of a marriage, (ii) for a divorce, whether from the bond of matrimony or from bed and board, (iii) that neither party is entitled to a divorce, or (iv) for separate maintenance, *the court may make such further decree as it shall deem expedient concerning* the custody or visitation and *support of the minor children of the parties* as provided in Chapter 6.1 (§ 20-124.1 et seq.) of Title 20, including an order that either party or both parties provide health care coverage or cash medical support, or both.

(Emphasis added).

From the earliest versions of Code § 20-107.2, the Supreme Court has held that "'the evident purpose of the legislature was to give to the court *the largest discretion* in respect to the estate of the parties, and *not to relieve the offending parent of any duty*, moral, social, or otherwise.'" Morris v. Henry, 193 Va. 631, 639, 70 S.E.2d 417, 422 (1952) (emphasis added) (quoting Heninger v. Heninger, 90 Va. 271, 275, 18 S.E. 193, 195 (1893)). Moreover, the Supreme Court has explained that "the welfare of the child is to be regarded more highly than the technical legal rights of the parent." Forbes v. Haney, 204 Va. 712, 716, 133 S.E.2d 533, 536 (1963). Simply put, "[w]here the interest of the child demands it," the rights of a parent "may be disregarded." Id.

Based on these established principles of Virginia domestic relations law, father owes his minor children the duty of satisfying his child support obligations. Thus, father is also obligated to satisfy any child support arrearage that has accrued due to his own failure to pay child support

– regardless of whether the arrearage is small or, as in this case, the arrearage has grown to over $28,000. The trial court here ordered father to pay the child support arrearage "in full immediately," and the record discloses *only one asset* that could possibly be used to satisfy the child support arrearage – father's retirement account. Both ERISA and Virginia law certainly permit the attachment of this asset through the entry of a QDRO. Therefore, the trial court's finding to the contrary was reversible error.

## III. CONCLUSION

The record here establishes that a QDRO attaching father's retirement account represents *the only* actual method of enforcing the trial court's child support orders, which father has completely ignored and frustrated to the severe detriment of his own children. Code § 20-107.2. ERISA *and* Virginia's law on domestic relations authorized the circuit court to enter a QDRO under the specific circumstances of this case. Therefore, we reverse the circuit court's finding that it lacked authority to enter a QDRO. It incorrectly found that it was bound in this situation by this Court's decision in Hoy – which is distinguishable from the present case before us now, given this case's very different circumstances.

Whether mother's draft QDRO in this case actually *qualified* as a QDRO under ERISA's technical requirements pertaining to the contents of a QDRO is, of course, a question that we cannot resolve in this appeal. The trial court never actually considered the contents of the draft QDRO and also denied mother's request to admit into the evidence at trial certain documents relevant to father's retirement account. Accordingly, we direct the circuit court on remand to grant mother leave to file a new draft QDRO reflecting any changes in circumstances that have occurred since her written motion of January 13, 2011, to admit financial documents relevant to the entry of a QDRO, and to determine whether mother's draft QDRO meets ERISA's technical

requirements for the contents of a QDRO, including those in 29 U.S.C. § 1056(d)(3)(C) and 1056(d)(3)(D).

<u>Reversed and remanded.</u>