MARTHA K. BROWN AND JAMES W. BROWN, JR., PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 1719–67. Filed September 16, 1968.

*James W. Brown, Jr.*, for the petitioners.
*E. M. Paturis*, for the respondent.

FORRESTER, *Judge:* Respondent has determined a deficiency in the petitioners' income tax for the year 1964 in the amount of $353.30. The only issue is whether $2,080 paid to Martha K. Brown (hereinafter sometimes referred to as Martha) in 1964 by James John Neate, her former husband (hereinafter sometimes referred to as Neate), was received by her in discharge of a legal obligation imposed on James John Neate within the meaning of section 71(a), I.R.C. 1954,[1] and therefore includable in the gross income of Martha K. Brown.

#### OPINION

All of the facts were stipulated. Those facts which are necessary to an understanding of the issue are included below.

The petitioners were married to each other on January 24, 1964, and timely filed their joint income tax return for that year with the district director of internal revenue at Richmond, Va. They were residents of the State of Virginia at the time the petition herein was filed. The sole issue which is presented involves only the income of Martha K. Brown and she will be referred to hereinafter as petitioner. She is represented herein by her husband, a practicing attorney admitted to the bar of this Court.

---

[1] All references are to the Internal Revenue Code of 1954.

Petitioner married James John Neate at Falls Church, Va., on June 24, 1946. Two children were born of such marriage on September 24, 1947, and August 3, 1949. On May 6, 1955, Neate deserted and abandoned petitioner, and on June 16, 1958, she divorced him, receiving her final decree from the Circuit Court for Wythe County, Va., which provided in pertinent part:

It is further adjudged, ordered and decreed that the defendant, James John Neate, pay to the complainant $40.00 per week until further order of court for the maintenance and support of the two children and as alimony for the complainant; * * *

Pursuant to such final decree petitioner received $2,080 from Neate in 1964, none of which was included on the joint income tax return which the petitioners filed for such year.

On January 24, 1967, the respondent by his statutory deficiency notice addressed to the petitioners increased their gross income $2,080 with the following explanation: "To increase income by $2,080.00 representing alimony received by Mrs. Brown which was omitted from the return."

Thereafter on February 14, 1967, petitioner obtained a decree from the same Wythe County, Va., Circuit Court which had granted her divorce which decree reads in pertinent part:

It further appearing to the Court that the said Mary Martha King Neate has remarried, * * * and that the two children are now living with her in Richmond, Virginia, * * * and that she desires the decree to be amended as hereinafter set out, * * *

*       *       *       *       *       *       *

That the paragraph in the decree which reads as follows, to-wit:

"It is further adjudged, ordered and decreed that the defendant, James John Neate, pay to the complainant $40.00 per week until further order of court for maintenance and support of the two children and as alimony for the complainant; * * *"

*       *       *       *       *       *       *

It is therefore adjudged, ordered and decreed that the paragraph in said decree be and the same is hereby amended to read as follows, to-wit:

It is further adjudged, ordered and decreed that the defendant, James John Neate, pay to the complainant, Mary Martha King Brown, $40.00 per week until further order of court for maintenance and support of the two children.

*       *       *       *       *       *       *

I ask for this decree:

(Signed)  Mary Martha King Brown
MARY MARTHA KING BROWN

I agree to this decree:

(Signed)  James John Neate
JAMES JOHN NEATE

In their joint income tax return for the year in issue the petitioners claimed Martha's two children as dependents and showed that they had furnished all of the support for each.

We are here dealing with a situation in which there was no so-called property settlement agreement or "written instrument incident to [the] divorce." The parties to the divorce probably had a pretty good idea as to how much the June 16, 1958, final decree of the Wythe County Circuit Court would provide for and may even have agreed orally that the $40 weekly payments were satisfactory to each of them, but this is all pure speculation. The record shows only that such final decree did issue and that the pertinent paragraph read:

It is further adjudged, ordered and decreed that the defendant, James John Neate, pay to the complainant $40.00 per week until further order of court for the maintenance and support of the two children and as alimony for the complaint; and * * * [2]

It has been observed countless times that the word "alimony" nowhere appears in section 71(a), see, e.g., *Ada M. Dixon*, 44 T.C. 709 (1965). The pertinent language of that section is:

payments * * * in discharge of * * * a legal obligation which, because of the marital or family relationship, is imposed on * * * the husband under the decree * * * [of] divorce * * *

Section 20-110 of the Virginia Code of 1950 provides that "alimony" shall cease on remarriage.[3] It is petitioner's position that this statutory provision is mandatory, relieving Neate from any obligation to pay alimony in the event of her remarriage and that consequently such payments fall outside of section 71(a).[4]

Respondent contends that Neate's legal obligation to pay alimony was imposed on him by the 1958 decree, and continued even after Martha's remarriage because of the decree's language "until further order of court" since there had been no such further order until after the year in issue. Respondent also contends that the 1942 revision of what is now section 71 of the Code [5] was intended to end distinctions

---

[2] Since the language of the decree does not sufficiently identify any portion of the payments as child support, they are all considered to be alimony. *Commissioner* v. *Lester*, 366 U.S. 299 (1961).

[3] Sec. 20–110. Alimony to cease on remarriage.—If any person to whom alimony has been awarded shall thereafter marry, such alimony shall cease as of the date of such marriage.

[4] SEC. 71(a). GENERAL RULE.—

(1) DECREE OF DIVORCE OR SEPARATE MAINTENANCE.—If a wife is divorced or legally separated from her husband under a decree of divorce or of separate maintenance, the wife's gross income includes periodic payments (whether or not made at regular intervals) received after such decree in discharge of * * * a legal obligation which, because of the marital or family relationship, is imposed on *or* incurred by the husband under the decree *or* under a written instrument incident to such divorce or separation. [Emphasis supplied.]

[5] Secs. 71 and 215 were first enacted in 1942 as 22(k) and 23(u) of the 1939 Code to ease the tax burden on husbands paying alimony. Added by ch. 619, 56 Stat. 816, 817 (1942), sec. 22(k) of the 1939 Code provided for the inclusion in income of payments made to a spouse in the nature of alimony, and sec. 23(u) of the 1939 Code correspondingly permitted a deduction to the spouse making these payments. These sections were substantially reenacted in the 1954 Code. Cf. S. Rept. No. 1622, 83d Cong., 2d Sess., p. 10.

In order for payments to be includable under sec. 71 they must be "received * * * in discharge of * * * a legal obligation which, because of the marital or family relationship, is imposed on or incurred by the husband under the decree or under a written instrument incident to such divorce or separation."

based upon variations between the laws of different States and that therefore the provisions of the 1958 decree control for tax purposes despite any provisions of Virginia's laws.

Respondent points to H. Rept. No. 2333 and S. Rept. No. 1631, both of the 77th Congress,[6] in support of his second contention, and indeed this report does state that the amendments to sections 22(k) and 23(u) of the 1939 Code (now sections 71(a) and 215 of the 1954 Code) will produce uniformity in the treatment of amounts paid in the nature of alimony regardless of variance between the laws of different States. Respondent omits to say, however, that prior to the 1942 amendments referred to in the above reports, it was the law that amounts paid to a former spouse were not deductible from the income of the spouse making the payment unless he could demonstrate that the divorce decree, the settlement agreement, and State law operated as a complete discharge of his liability for support. *Douglas* v. *Willcuts*, 296 U.S. 1 (1935); *Helvering* v. *Fitch*, 309 U.S. 149 (1940); *Commissioner* v. *Lester*, 366 U.S. 299 (1961). Thus, the language of the committee reports simply recognized that the 1942 enactment created uniformity by obviating the showing of a complete discharge from liability.

We believe that the committee reports support petitioner's position, for they expressly recognize that the payments in question are taxable to the receiving spouse during "the existence *and continuance* of an obligation to pay alimony." (Emphasis supplied.) The reports further support petitioner's position by the language (p. 428):

This section applies only where the legal obligation being discharged arises out of the family or marital relationship in recognition of the general obligation to support, which is made specific by the instrument or decree. * * *

Thus the language of these reports indicates that the keystone to what is presently section 71 is not the decree itself, but the "legal obligation which is made specific by the * * * decree." In Rev. Rul. 60-142, 1960-1 C.B. 34, this point was recognized, when it was held that a pre-divorce property settlement agreement constituted a final and permanent adjustment of the parties' rights and obligations, and thus payments made by the husband to his former wife, under an *amendatory* agreement, after her divorce and subsequent remarriage,

---

[6] H. Rept. No. 2333, 77th Cong., 1st Sess. (1942), 1942-2 C.B. 427 (substantially similar language contained in S. Rept. No. 1631, 77th Cong., 2d Sess. (1942), 1942-2 C.B. 568):

This section * * * [will] provide in certain cases a new income tax treatment for payments in the nature of or in lieu of alimony or an allowance for support as between divorced or legally separated spouses. These amendments are intended to treat such payments as income to the spouse actually receiving or actually entitled to receive them and to relieve the other spouse from the tax burden upon whatever part of the amount of such payments is under the present law includible in his gross income. In addition, the amended sections will produce uniformity in the treatment of amounts paid in the nature of or in lieu of alimony regardless of variance in the laws of different States concerning the existence and continuance of an obligation to pay alimony.

were held not to constitute "payments made because of the marital or family relationship in recognition of the general obligation to support."

In the instant case there was no settlement agreement or contract between petitioner and Neate contemporaneous to the 1958 decree. While we need take no position as to what result would ensue had there been such an agreement, it is certain that the decree of the Wythe County court, providing for alimony, until further order of the court, no longer had any force or effect under Virginia law after the petitioner's remarriage. We cannot and should not ascribe an action to that Virginia court which would be violative of the Virginia law.

In *Foster* v. *Foster*, 195 Va. 102, 77 S.E. 2d 471 (1953), the Supreme Court of Appeals of Virginia had to decide whether a court of chancery, in entering a decree for divorce *a vinculo matrimonii* and for alimony, in which the sole liability of the husband to his former wife arose from the decree, had the power (in the absence of a prior contract or property settlement agreement between the parties) to extend the alimony payments beyond the death of the husband. The wife argued that since the decree had ordered that the payments be made "until her death or remarriage" and was silent as to the circumstances of her husband predeceasing her, that his death should have no effect upon the liability. In rejecting this reasoning the court said (77 S.E. 2d at 475):

> Furthermore, we cannot agree with plaintiff's contention that the court intended in the instant case to extend the payment of alimony after the death of the husband, wherein its decree ordered alimony to be paid the plaintiff "until her death or remarriage". It is not claimed by plaintiff that payments could in any event extend beyond her death, and *Code*, § *20–110, supra, expressly provides that alimony should cease upon her remarriage*. Therefore, the inclusion in the decree of these contingencies had no legal effect and neither enlarged nor limited the obligation of the husband. No intent to exclude the contingency that alimony would be terminated by the husband's death is to be inferred therefrom. [Emphasis supplied.]

Respondent refers us to several cases in support of his position that Neate's legal obligation to pay alimony continued after petitioner's marriage. We find them all inapposite, for they all involve property settlement agreements (a written instrument incident to such divorce, i.e., a contract) between the parties. We have no such agreement in the present case.

In *Tuckie G. Hesse*, 7 T.C. 700 (1946), we said (p. 704):

> It is concluded from all of the evidence (1) that the payments in question were made under the agreement of February 14, 1936; and (2) that they were in discharge of a legal obligation which was *incurred by* the former husband under a written instrument incident to divorce. In our opinion, these payments come within the scope and intendment of section 22(k), and it is held that petitioner

must include in her income for 1942 and 1943 the $3,600 which she received from her former husband. [Emphasis supplied.]

In *Thomas E. Hogg*, 13 T.C. 361 (1949), we stated (p. 367):

As the parties had reached this agreement before the petition for divorce was even filed, the wife obviously relinquished a present legal right to support in exchange for a future contractual right to support. And the husband *incurred* this contractual obligation because of the marital relationship and "to take care of the lack of any provision under law which would require the payment of alimony." [Emphasis supplied.]

In *Ada M. Dixon*, 44 T.C. 709 (1965), the decision also depended upon the existence of an agreement. We stated (p. 714):

Petitioner's approach, crucial to her theories, is that paragraph Seventh of the separation agreement does not amount to a binding and legally enforceable contract to pay her royalties accruing after Dixon's death and that, therefore, such payments to her were required or motivated otherwise. * * *

* * * * * * *

Whether a written agreement amounts to a legally enforceable contract is determined by reference to State law. In the instant case it is not clear whether the law of Arkansas or New York should apply. Dixon signed the document before a public notary in Arkansas, and the petitioner's signature was notarized in New York. The instant case was tried on a complete, if imperfect, stipulation of the facts, and there is no evidence as to where the contract was drawn up or where the parties intended it to be performed. Fortunately the applicable law of both New York and Arkansas compel the decision we reach.

Respondent also relies upon I.T. 4108, 1952-2 C.B. 113. In the example there given the taxpayer's former wife procured a decree of divorce in 1937 which provided for an unallocated weekly sum for alimony and child support. In 1941 the taxpayer's former wife remarried; he continued to make payments to her for 6 years, but stopped in 1947. The taxpayer was cited for arrears and the State court held that the alimony terminated as of the date of the former wife's remarriage, but entered an order continuing the payments for the support of the parties' minor child. Relying on *Laughlin's Estate* v. *Commissioner*, 167 F. 2d 828 (C.A. 9, 1948) (which is also relied upon by respondent in the instant case), I.T. 4108 held that under the example there given the payments made by the husband to his divorced wife subsequent to her remarriage and prior to the modifying order came within the scope of what is presently section 71 and were taxable to her.

We observe that *Laughlin's Estate* involved a property settlement agreement, incident to the divorce, and that the payments to the surviving wife were required by its terms, and thus within the scope of section 71. To paraphrase that section, they were made because they had been *"incurred by the husband under a written instrument* inci-

dent to [the] divorce," and therefore it follows that they were not "*imposed on* the husband under the *decree*."

The error of respondent's reasoning in I.T. 4108 is thus identical to the error of his reasoning in the instant case. He fails to distinguish, based upon the clear duality of section 71(a), between, "imposed on, * * * under the decree," *or* "incurred by, * * * under a written instrument incident to such divorce." In each of the cases relied upon by respondent the "legal obligation" of the husband continued after the critical event because such obligation had been validly "*incurred by*" the husband, and thus, none of respondent's cases are on point.

Respondent also argues that since petitioners showed they had furnished all of the support for Martha's children during the year in issue that the payments from Neate could not have been for child support and were therefore alimony. But respondent's syllogism fails to equate. We need not and do not characterize the payments other than to hold that they were not alimony; but they could have been non-taxable gifts, in which event the petitioner's tax return would have made a correct representation.

We hold that under the law of Virginia the petitioner's former husband was under no legal obligation to continue making payments subsequent to the petitioner's remarriage and, therefore, the petitioner was not required to include such payments in her income tax return for the calendar year 1964.

*Decision will be entered for the petitioners.*