*Decisions will be entered under Rule 50.*

HERBERT I. JOSS, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 4031–69. Filed May 18, 1971.

*Jerrold M. Facktor*, for the petitioner.
*James F. Hanley, Jr.*, for the respondent.

SCOTT, *Judge:* Respondent determined a deficiency in petitioner's income tax for the calendar year 1963 in the amount of $5,266.93 and an addition to tax under section 6653(a), I.R.C. 1954,[1] in the amount of $263.35.

The issues for decision are:

(1) Whether petitioner's former wife received $23,000 of taxable income which she and petitioner failed to include in their joint Federal income tax return for the calendar year 1963.

(2) Whether petitioner and his former wife are entitled to the three dependency exemptions claimed on their joint return for her three children who resided with them during the year 1963.

(3) Whether petitioner is liable for the addition to tax for negligence for the year 1963.

(4) Whether, if the $23,000 received by petitioner's former wife is includable in their income reportable on the basis of a joint return, petitioner should be relieved from tax on this amount under the provisions of section 6013(e).[2]

### FINDINGS OF FACT

Some of the facts have been stipulated and are found accordingly.

Petitioner is an individual who resided in Chicago, Ill., at the time the petition in this case was filed.

During the calendar year 1963 petitioner and his then wife were living together in Chicago. They filed a joint Federal income tax

---

[1] All references are to the Internal Revenue Code of 1954.

[2] Sec. 6013(e) was added to the Revenue Code by Pub. L. 91–679, approved Jan. 12, 1971, and because of this fact this issue was raised by petitioner by amendment to his brief filed Feb. 3, 1971. Respondent did not object to the issue being raised but moved that the case be set for further trial to permit him to offer the testimony of petitioner's former wife. This motion was granted and the further trial was held in Chicago, Ill., on Apr. 29, 1971.

return for the calendar year 1963 with the district director of internal revenue, Chicago, Ill. The date shown on this return on the line provided therefor next to the line provided for the signatures is April 14, 1964.

Petitioner and Gwendolyn Walton (hereinafter referred to as Gwendolyn) were married on November 25, 1962. Subsequent to the year 1963 they were divorced.

Gwendolyn had married Julius Walton (hereinafter referred to as Walton) in 1941 and was divorced from him on May 28, 1959. At the time of the divorce, the three children of Gwendolyn and Walton, Randall, April, and Melinda, were 15, 9, and 8 years old, respectively. Gwendolyn was given custody of the children, and they resided with her and petitioner during the taxable year 1963.

During the calendar year 1963 Gwendolyn was receiving from her first husband, Walton, $600 a month for child support and $416.66 as payment on a property settlement.

On May 28, 1960, Gwendolyn married Edward A. Schrader (hereinafter referred to as Schrader). On June 5, 1961, Gwendolyn and Schrader entered into a written separation agreement which, among other things, provided that Schrader was to pay Gwendolyn for her support and maintenance the sum of $23,000 per year until her death or remarriage and that a subsequent divorce was not to affect or impair the provisions of the agreement. On August 25, 1961, Gwendolyn and Schrader were divorced.

Gwendolyn told petitioner that she was receiving $23,000 a year in monthly payments from Schrader, which payments would stop in the event of her remarriage or death. Both petitioner and Gwendolyn knew that it was proper for Gwendolyn to notify Schrader of her marriage to petitioner. During 1963 Schrader paid Gwendolyn $23,000.

In January 1964 the fact that Gwendolyn had married petitioner came to Schrader's attention. In February both Gwendolyn and petitioner received a copy of a letter written by Schrader's attorney to the attorney who had represented Gwendolyn in connection with the drafting of the separation agreement between her and Schrader. This letter was dated February 3, 1964, with carbon copies to Gwendolyn at her home address, petitioner at his business address, and Schrader. The body of this letter reads as follows:

In May and June of 1961, I believe that you represented Mrs. Gwendolyn E. Schrader, as she then was, in relation to the negotiation and drafting of the separation agreement between her and my client Edward A. Schrader.

Under the terms of the separation agreement, Mr. Schrader was obligated to pay Gwendolyn E. Schrader alimony at the rates set forth in Article Eighth of the agreement, "until the death or remarriage of the Wife or the creation of the trust as hereinafter provided, whichever event shall first occur, . . ."

Mr. Schrader has made the payments called for by the agreement, commencing with the date of the agreement and continuing down to and including the payment due on January 1, 1964.

I have now in my possession a certified copy of a marriage application and record issued from the office of Edward J. Barrett, County Clerk of the County of Cook, recording the fact that Gwendolyn Edith Walton, the name that Mrs. Schrader assumed upon her divorce from Mr. Schrader, was married to Mr. Herbert Joss on November 25, 1962. Accordingly, Mr. Schrader is not obligated to make further payments to Mrs. Joss. In addition, Mrs. Joss is clearly obligated to return to Mr. Schrader the payments made by him to her after November 25, 1962 with appropriate interest. These payments total $26,000.

Since the terms of the separation agreement are clear and the facts established as a matter of record, I trust that it will not be necessary to take any proceedings to enforce this obligation.

On or about April 20, 1964, Schrader sued Gwendolyn in a proceeding in the Circuit Court of Cook County, County Department, Law Division (No. 64–L–6362) for return of all moneys he had paid to her subsequent to her marriage to petitioner. The total sum that Schrader sued to obtain was $26,000, representing payments from November 25, 1962, through January 1, 1964. Schrader secured a judgment against Gwendolyn for $26,000. The basis for Schrader's successful suit was that his obligation to make payments to Gwendolyn under the June 5, 1961, agreement terminated by virtue of Gwendolyn's marriage to petitioner, and that all payments made to her after the date of her marriage to petitioner unjustly enriched her.

During 1963 Gwendolyn maintained a checking account at the Upper Avenue National Bank, Chicago, Ill., under the name of Gwendolyn E. Walton. Gwendolyn deposited the $23,000 she received from Schrader in 1963 in this account and in addition also deposited during 1963 other moneys in the account totaling at least $8,000. Petitioner knew of the existence of this account of Gwendolyn's and occasionally at her request would cash a check for her drawn on this account. However, petitioner did not know any details with respect to the deposits or withdrawals in this account and had no authority over the account. During 1963 all checks drawn on this account were drawn by Gwendolyn.

Petitioner never received any cash from checks drawn on Gwendolyn's account during 1963 or any other direct funds from Gwendolyn. Some of the checks drawn on this account were for household expenses of petitioner, Gwendolyn, Gwendolyn's three children, and petitioner's two children.

Petitioner on his joint return with Gwendolyn reported wages of $6,537 from Rothschild & Co. and Federal taxes withheld of $441.30. He reported dividends after the $50 exclusion of $55 and capital transactions involving sales of stock held for less than 6 months with

a gross selling price of $17,726.57 and sales of stock held for more than 6 months with a gross selling price of $7,367.49. Petitioner and Gwendolyn claimed $600 exemptions on their joint return for themselves and for Gwendolyn's mother, Gwendolyn's three children and petitioner's two children.

During 1963 petitioner and Gwendolyn, together with Gwendolyn's two daughters and petitioner's two children lived in an apartment at 3800 Lakeshore Drive in Chicago. Gwendolyn's son was away at boarding school or at camp during most of the year 1963. Prior to petitioner's marriage to Gwendolyn, she had been living in this apartment. The lease was in her name. The apartment had four bedrooms and the rental on the apartment was approximately $300 a month. Gwendolyn paid the rental on the apartment and handled all the bills such as telephone and food bills. Gwendolyn's three children and petitioner's two children went to private schools and petitioner and Gwendolyn employed a maid. Gwendolyn's former husband, Walton, paid the tuition of Gwendolyn's two daughters at their private school and the expenses, except allowance, transportation, and clothes for Gwendolyn's son at boarding school in addition to paying Gwendolyn $600 per month for child support. The maternal grandfather of petitioner's two children paid their tuition at private school.

In 1963 petitioner had recently gone into the securities business. However, he had been employed for many years prior to 1963 in other occupations and had substantial savings.

Respondent in his notice of deficiency increased the income as reported by petitioner and Gwendolyn on their joint income tax return by the amount of $23,000 with the explanation that amounts received by Gwendolyn from Schrader during the taxable year 1963 are taxable as ordinary income. Respondent also disallowed the $1,800 claimed as dependency exemptions for the three children of Gwendolyn and Walton with the explanation that it had not been established that petitioner and Gwendolyn furnished more than one-half of the support for the children during the taxable year 1963. Respondent also determined an addition to tax under section 6653(a) with the explanation that it had been determined that part of the underpayment of tax for the year was due to negligence or intentional disregard of rules and regulations.

Petitioner by amendment to his brief contends that if the $23,000 is taxable income of Gwendolyn which should have been reported on the joint return of petitioner and Gwendolyn, then under section 6013(e) he should be relieved of tax (including interest and penalty) attributable thereto.

OPINION

Respondent takes the position that the $23,000 received by Gwendolyn from Schrader in 1963 constitutes income within the definition of section 61. Respondent points out that section 61 defines gross income as all income from whatever source derived with certain specified exceptions. It is respondent's position that none of these exceptions applies to the $23,000.

At the trial petitioner apparently was relying, as he had in his petition, on the fact that he had no knowledge of the receipt by Gwendolyn in 1963 of the $23,000. Petitioner, aside from his argument under section 6013(e), has apparently dropped the contention that he is not taxable on the $23,000 because he did not know that Gwendolyn received it. In any event, if he has not, the cases decided by this Court are uniform in holding that a failure by one spouse to disclose receipt of funds to the other spouse does not relieve the spouse who does not have the knowledge of the funds from being liable for a deficiency occasioned by failure to report such funds in a joint return of the two spouses. See *Betty Bell Wissing*, 54 T.C. 1428 (1970), affirmed in part 441 F. 2d 533 (C.A. 6, 1971).[3]

On brief petitioner contends that since the $23,000 was paid to Gwendolyn after the legal obligation of Schrader to make such payment had ceased, the amount does not constitute income to Gwendolyn.[4] Petitioner contends that the nature of a payment by a husband to his former wife ceases to be alimony where there is no legal obligation to make the payment and the payment becomes something else such as a gift or a loan, citing as support of that position *Martha K. Brown* v. *Commissioner*, 415 F. 2d 310 (C.A. 4, 1969), affirming per curiam 50 T.C. 865 (1968). In *Martha K. Brown* (50 T.C. 865, 868), we pointed out that prior to the enactment of the predecessor of sections 71(a) and 215, it had been uniformly held that alimony paid by a husband to his wife or to his former wife was not income to the wife but rather was a portion of the husband's estate allocated to the wife for her support because of the legal duty of support owed to his wife and family. See *Gould* v. *Gould*, 245 U.S. 151 (1917). Likewise, since the legal duty to support his family out of his income was not an item which was deductible, the husband was entitled to no deduction

---

[3] It was holdings such as this by the courts which occasioned the enactment of Pub. L. 91–679, approved Jan. 12, 1971. See S. Rept. No. 71–1537, to accompany H. Rept. No. 9774 (Pub. L. 91–679), 91st Cong., 2d Sess., and H. Rept. No. 91–1734, 91st Cong., 2d Sess. (1970).

[4] At the further trial Gwendolyn stated that Schrader had "dropped the charges" against her apparently meaning that he was no longer attempting to collect on his judgment against her.

for alimony paid to his former wife. *Douglas* v. *Willcuts*, 296 U.S. 1 (1935). We then concluded that since alimony was not required of a husband under the State law governing the divorce there involved when a wife had remarried, the payment to the wife was no longer alimony within the meaning of sections 71 and 215.

In *Martha K. Brown*, we stated (50 T.C. at 871):

> We need not and do not characterize the payments other than to hold that they were not alimony; but they could have been nontaxable gifts, in which event the petitioner's tax return would have made a correct representation.
>
> We hold that under the law of Virginia the petitioner's former husband was under no legal obligation to continue making payments subsequent to the petitioner's remarriage and, therefore, the petitioner was not required to include such payments in her income tax return for the calendar year 1964.

In that case we stated that the only issue for decision was whether the payments received by the taxpayer were includable in her income under section 71(a). We held that the payments were not includable under that section. We pointed out that certain cases holding amounts received by a divorced wife from her former husband to be includable in her income after her remarriage involved payments under a settlement agreement or divorce decree based on a settlement agreement specifically providing for the continuance of the payments if the wife remarried.

The decree under consideration in the *Martha K. Brown* case provided that the husband pay the wife "$40 per week until further order of the court for the maintenance and support of the two children and as alimony for the complainant." Apparently the taxpayer was contending that the payments received after her remarriage were for child support. (See the statement to this effect in the opinion of the Court of Appeals affirming per curiam our decision, *Brown* v. *Commissioner*, *supra*.) There is nothing in the record in the *Martha K. Brown* case to indicate that respondent contended that the amounts received by the taxpayer were includable in her income at all if they were not includable under section 71(a). Certainly the fact that a former husband was no longer under obligation to make payments to his former wife would not relieve him of the legal obligation of making payments for support of his minor children. Cf. *Estate of Louis Fabrikant*, 39 T.C. 714 (1963), and *Allen Hoffman*, 54 T.C. 1607 (1970), on appeal (C.A. 7, Nov. 9, 1970).

Because of the narrow issue presented in the *Martha K. Brown* case and the factual differences in that case and the instant case, we conclude that our holding in that case does not require a conclusion in favor of petitioner in the instant case. In the instant case we must determine whether the $23,000 received by Gwendolyn is includable in her taxable income under section 61. It is so includable unless it

is not income because of being a loan or a part of her husband's estate allocated for her support or that of his children or is excludable under some section of the Revenue Code.

Respondent states that the factual situation present in this case precludes a finding of either a gift or a loan by Schrader to Gwendolyn. The record shows that Schrader did not know of Gwendolyn's remarriage until January 1964 and made the payments under the misapprehension that she was not remarried.

Respondent argues that the amount is not a gift since to hold the amount to be a gift necessitates at a minimum a finding of an intention on the part of Schrader to make a gift. See *Commissioner* v. *Duberstein*, 363 U.S. 278 (1960). We agree with respondent that under the facts here, a finding cannot properly be made that the money paid by Schrader to Gwendolyn in 1963 was a gift or in the nature of a gift.

We also conclude that the payments by Schrader to Gwendolyn are not excludable from Gwendolyn's income under the rationale of such cases as *Gould* v. *Gould, supra,* since after Gwendolyn's remarriage there was no legal obligation on Schrader to pay her support money. After Gwendolyn's remarriage the payments were not in effect her receipt of a part of the income or estate of her former husband due to her because of his legal or moral obligation to support her.

The payments here were obviously not in effect for child support since insofar as this record shows there was no child support ever paid by Schrader to Gwendolyn. From the facts in this case it is likewise clear that the payments by Schrader to Gwendolyn were not loans. Schrader's suit was based on unjust enrichment. The suit was founded on his claim that Gwendolyn had received sums from Schrader which she was not entitled to receive and therefore there was an implied contract that she repay the amount to him. The nature of a loan is an express contractual obligation or an understanding between the parties that the borrower is to repay the lender. A finding that moneys must be repaid because the recipient thereof was unjustly enriched negates a conclusion of the existence of an express contractual obligation or an understanding of the type present in case of a loan.

Gwendolyn's obligation to repay Schrader is not in substance different from the obligation of an embezzler to repay the one from whom he has embezzled funds. In *James* v. *United States*, 366 U.S. 213 (1961), the Court held, overruling its prior decision to the contrary, that the obligation of an embezzler to repay the person from whom the sums were embezzled does not cause the embezzled amount not to constitute income to the embezzler in the year of the embezzlement. The $23,000 received by Gwendolyn from Schrader in 1963 certainly carried with it no stronger obligation to repay than would be the obli-

gation of an embezzler to repay the person from whom he had embezzled.

The Court in *James* v. *United States, supra,* pointed out that where a taxpayer legally acquires an amount without the consensual recognition, expressed or implied, of an obligation to repay and without restriction as to the disposition of the amount acquired, he has received income which he is required to return even though it may still be claimed that he is not entitled to retain the money and at some later date he may be adjudged liable to restore it or its equivalent. The Court then went on to state that it did not believe that Congress intended to treat the taxpayer who acquired money unlawfully more favorably than a person who legally acquires money he is later held not to be entitled to retain. The Court pointed out that just as any taxpayer may deduct an amount previously reported as income which he is later required to repay, a person who misappropriates funds of another may, of course, deduct amounts which he later repays in the year of repayment.

Gwendolyn took the funds she received from Schrader, put them in her bank account and used them as she saw fit for her own purposes during 1963. The circumstances under which the payments were made are such that no finding can be made that the amounts are excludable as a loan or under the provisions of the Code excluding gifts from income. Petitioner has suggested no other provision of the Revenue Code under which the $23,000 is excludable from Gwendolyn's income. We therefore have a situation in which Gwendolyn received amounts which were subject in 1963 to her free control. She used the sums as she saw fit during the year 1963. Under these facts there is no basis for concluding that the amounts which Gwendolyn received from Schrader in 1963 were not income to her in that year. In our view, the holding of the Court in *James* v. *United States, supra,* as well as the holding in *North American Oil* v. *Burnet,* 286 U.S. 417 (1932), which was relied on by the Court in *James* v. *United States, supra,* requires the conclusion that the $23,000 received by Gwendolyn from Schrader in 1963 was income to her in that year.

The meager evidence in the record as to the cost of support of Gwendolyn's three children during the year 1963 indicates that Walton rather than Gwendolyn and petitioner furnished the major portion of their support. In any event, the burden is on petitioner to establish the fact that he and Gwendolyn did contribute over one-half of the support of the three children in order for him to be entitled to the exemptions he has claimed and this he has not done.

Petitioner makes no argument with respect to the addition to tax which respondent determined for negligence or intentional disregard

of the rules. There is nothing in this record to show that Gwendolyn and petitioner were not negligent or in intentional disregard of the rules in failing to include the $23,000 in the income reported on the joint return and in claiming dependency exemptions for Gwendolyn's three children. The burden is on petitioner to show that respondent erred in determining the addition to tax for negligence or intentional disregard of the rules and regulations. This burden petitioner has not carried.

Since we have concluded that without consideration of the provisions of section 6013(e), petitioner is liable for the deficiency and addition to tax for 1963 as determined by respondent, we reach the question raised by the amendment to petitioner's brief contained in the letter from his counsel, filed with the Court on February 3, 1971. In that letter the attention of the Court was called to Pub. L. 91–679, H. Rept. No. 19774, 91st Cong., 2d Sess., Jan. 12, 1971, which amended section 6013(e), I.R.C. 1954,[5] to provide that in certain cases the spouse will be relieved of liability arising from a joint return. Under section 3 of Pub. L. 91–679, this provision of this Code is to "apply to all years to which the Internal Revenue Code of 1954 applies" and corresponding provisions are to be deemed to be included in the Internal Revenue Code of 1939. Ordinarily, we would not consider a new issue raised on brief. However, since respondent did not object to petitioner's raising the issue in such a manner and the issue arose by a retroactive amendment to the Code, we are considering the application of section 6013(e) to this case. In connection with this issue we are considering the evidence adduced both at the original trial and further trial in this case.

From the facts we have found, it is apparent that the $23,000 improperly omitted by petitioner and Gwendolyn from their joint return was in excess of 25 percent of the amount of gross income stated in the return. However, the evidence shows that petitioner at the time he signed the return did know of the omission. Therefore

---

[5] Sec. 6013(e) added to I.R.C. 1954 by Pub. L. 91–679 provides as follows:

(e) SPOUSE RELIEVED OF LIABILITY IN CERTAIN CASES.—

(1) IN GENERAL.—Under regulations prescribed by the Secretary or his delegate, if—

(A) a joint return has been made under this section for a taxable year and on such return there was omitted from gross income an amount properly includable therein which is attributable to one spouse and which is in excess of 25 percent of the amount of gross income stated in the return,

(B) the other spouse establishes that in signing the return he or she did not know of, and had no reason to know of, such omission, and

(C) taking into account whether or not the other spouse significantly benefited directly or indirectly from the items omitted from gross income and taking into account all other facts and circumstances, it is inequitable to hold the other spouse liable for the deficiency in tax for such taxable year attributable to such omission,

then the other spouse shall be relieved of liability for tax (including interest, penalties, and other amounts) for such taxable year to the extent that such liability is attributable to such omission from gross income.

the condition imposed by section 6013(e)(1)(B) has not been met in this case. Unless this condition is met, the relief provided for by the section is not to be granted.

The evidence in this record is conflicting as to whether petitioner knew prior to February 1964 that Gwendolyn was receiving the payments from Schrader. Gwendolyn testified that he did know in December 1962 and throughout 1963 that she was receiving these payments. She stated that she discussed the receipt of these payments with him and that he suggested she not notify Schrader of her marriage so that she could continue to receive the payments. Petitioner testified that he did not know until he received notice in the form of a copy of a letter in February or March 1964 that Gwendolyn was continuing to receive the payments from Schrader. He testified that about the time he and Gwendolyn were married he told her to notify Schrader of their marriage and that about 1 week later Gwendolyn told him she had given this notice to Schrader.

The testimony of Gwendolyn and petitioner is also in direct conflict as to whether petitioner benefited from the moneys Gwendolyn received from Schrader and if so to what extent. Gwendolyn testified that she paid the apartment rent and paid for all food, utilities, and miscellaneous household expenses. She testified that petitioner never gave her any money as reimbursement for any of these expenses or for any other purpose during the year 1963. Petitioner testified that he gave Gwendolyn $100 in cash for household expenses during each week of the year 1963 and that in addition he paid the wages of their maid.

In this case we do not find it necessary to resolve the conflict in the testimony of Gwendolyn and petitioner. Both testified that petitioner knew of Gwendolyn's receipt of the $23,000 from Schrader in 1963 prior to the signing of the joint return in April 1964. This fact is sufficient to prevent petitioner's being entitled to the relief provided for by section 6013(e).

*Decision will be entered for respondent*