HOMER H. HEWITT, III and PATRICIA DELP HEWITT, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Hewitt v. Commissioner
Docket No. 280-71.
United States Tax Court
T.C. Memo 1972-251; 1972 Tax Ct. Memo LEXIS 8; 31 T.C.M. (CCH) 1247; T.C.M. (RIA) 72251; December 21, 1972, Filed Homer H. Hewitt, III, pro se. Mary Ann Hagan, for the respondent. TIETJENS
MEMORANDUM OPINION TIETJENS, Judge: The Commissioner determined a deficiency in income tax for the year 1966 in the amount of $956.85. The only question to be decided is the correctness of the Commissioner's determination "that the amount of $4,800.00 which you received in 1966 from Patricia D. Hewitt's former husband, Otis R. Lail, Jr., pursuant to separation agreement entered into prior to divorce is includable *9 in your gross income under section 71 of the Internal Revenue Code. Therefore, your taxable income is increased in the amount of $4,800.00." All of the facts are stipulated and are so found. Only so many of the facts as are necessary for our decision are set forth hereafter. Petitioners are husband and wife and their legal residence on January 11, 1971, the date that the petition was filed in this action, was Haverford, Pennsylvania. Petitioners filed their joint Federal income tax return, Form 1040, for the calendar year 1966 with the district director of internal revenue at Philadelphia, Pennsylvania. Petitioners were married in November 1965. Petitioner, Patricia Delp Hewitt was previously married on January 12, 1946 in Pittsburgh, Pennsylvania to Otis R. Lail, Jr., and this marriage ended in divorce on January 5, 1959. In 1958, Patricia and Otis were separated. On October 25, 1958, Patricia (now Mrs. Hewitt) and Otis, then husband and wife, entered into a separation agreement. The separation agreement provided, among other things, for settlement of their respective property rights, and also for the support and maintenance of Patricia and the four *10 children of the marriage. The important paragraph of the separation agreement which is involved herein is as follows: HUSBAND shall pay WIFE Five Hundred ($500.00) Dollars each month for the maintenance and support of said wife and their four children. The payments to WIFE on behalf of the children shall continue during the lifetime of said children or until such time as they attain the age of eighteen (18) years or marry, which ever event shall first occur. In addition to the aforesaid monthly payments, HUSBAND shall pay all reasonable medical and dental expenses of the children. In this connection, WIFE shall submit bills covering all such expenses to HUSBAND as soon as received and HUSBAND shall promptly pay the same. The amount of $4,800 was received in 1966 from Patricia's former husband Otis Lail, Jr. During the first six months of 1966, Otis paid to his former wife, Patricia, the amount of $500 monthly. During the last six months of 1966, Otis paid to Patricia, the amount of $300 monthly. On or about December 3, 1966, Patricia, still a resident of Pennsylvania, filed a civil complaint in the Domestic Relations Branch of the District of Columbia Court of General Sessions *11 against her former husband Otis who was then a resident of the District of Columbia. The action was entitled "Complaint to Enforce Separation and Increase Child Support." In the complaint Patricia alleged in paragraph 4 as follows: Notwithstanding the provisions of the aforesaid paragraph 4, [of the separation agreement] the defendant has reduced his payments to the wife from $500 per month to $300 per month and there is, as of November 1, 1966, an arrearage due the plaintiff of $800. The defendant has reduced said monthly payments on the ground that the agreement calls for payments of $100 per month for each of the five beneficiaries thereof, i.e. the plaintiff and the four children, and that two of them are no longer entitled to support under the agreement, i.e. the plaintiff because she has remarried and Suzanne Lail because she is over the age of 18 years. Plaintiff alleges that the agreement makes no such allocation of the amounts due the plaintiff and that the agreement calls for payment of $500 until all children have reached the age of 18 or are otherwise no longer entitled to support. Plaintiff does not seek continued support for herself. In his answer to the complaint *12 Otis admitted: * * * from the execution of the aforementioned agreement on September 17, 1958, he faithfully paid all monies required by him to be paid pursuant to the agreement aforementioned through the month of June, 1966, notwithstanding the understanding of the parties that the payments for each child were to continue until age 18 and that $100.00 of the aforesaid sum of $500.00 was for the support and maintenance of the wife and $100.00 for each of the infant children of the parties. * * *. On April 10, 1967 the District of Columbia Court of General Sessions entered a "Judgment For Support" in Patricia's suit. We quote most of it as follows: The Court finds that the agreement was intended as a full settlement of all of their rights and claims. That said agreement was drafted at the direction of the plaintiff, and the defendant accepted what had been drafted as their 'separation agreement'. That the evidence disclose that he did not actively participate in discussions or conferences with plaintiff, which would indicate joint planning. The defendant when confronted with the instrument, now known as their 'separation agreement,' read it and signed on the dotted line. By so *13 doing, he in writing, in paragraph 4 of said agreement assumed his legal obligation to support his family. There is an absence of evidence indicating any specific agreement as to how the sum of $500.00 was to be allocated to or between the members of this family, the Court finds therefore that it was the intention of the parties that the lump sum of $500.00 payment had the same effect as an order of the Court, that is, the sum was for the equal benefit of all 5 persons; of the 5 persons one child has been emancipated and the wife has remarried, the Court finds that deducting $100.00 for each of the two persons, that the amount due and payable per month under the existing agreement is $300.00 that any other finding would be illogical and unjust. The Court therefore concludes as a matter of law that the payment of $300.00 per month satisfied this obligation after 2 persons of the 5 persons no longer qualified for support. Assuming that payments for March and April, 1967, have been made the Court concludes that there is no present arrearage. Further, the Court finds as a fact, that there has been material change in circumstances, since the execution of the agreement of October 1958, *14 due to the increase in the ages of the children changing the variety of their needs, the nature of their needs, the general increase in the cost of living, and the increased income of the defendant; that the present amount of support for the 3 children is inadequate to meet their needs and that the sum of $150.00 per child is the necessary and fair amount, in view of the children's needs; and the increase in the defendant's ability to pay, justifies this increase. The Court concludes as a matter of law that the monthly payment of $150.00 per child per month is necessary and adequate for the support and maintenenace [sic] of the 3 children. The Court hereby orders the defendant to pay to the plaintiff herein as support and maintenance for the 3 children of the parties the sum of $450.00 per month. That this modification of paragraph 4 of the separation agreement, which shall remain unchanged in all other respects. None of the $4,800 paid by Otis was included by petitioners on their 1966 joint Federal income tax return. ULTIMATE CONCLUSIONS OF FACT AND LAW The payments of $4,800 received by Patricia in 1966 from her former husband were made and received pursuant to the separation *15 agreement executed in 1958 and were includable in her gross income under section 71(a)(2), Internal Revenue Code of 1954. We think the payments involved in this case fall within section 71(a)(2), Internal Revenue Code of 1954. That section provides as follows: (a) General Rule.-- * * * (2) Written separation agreement.--If a wife is separated from her husband and there is a written separation agreement executed after the date of the enactment of this title, the wife's gross income includes periodic payments (whether or not made at regular intervals) received after such agreement is executed which are made under such agreement and because of the marital or family relationship (or which are attributable to property transferred, in trust or otherwise, under such agreement and because of such relationship). This paragraph shall not apply if the husband and wife make a single return jointly. The Regulations under this section - section 1.71-1 provide as follows: * * * (b) * * * (2) Written separation agreement. (i) Where the husband and wife are separated and living apart and do not file a joint income tax return for the taxable year, *16 paragraph (2) of section 71(a) requires the inclusion in the gross income of the wife of periodic payments (whether or not made at regular intervals) received by her pursuant to a written separation agreement executed after August 16, 1954. The periodic payments must be made under the terms of the written separation agreement after its execution and because of the marital or family relationship. Such payments are includible in the wife's gross income whether or not the agreement is a legally enforceable instrument. Moreover, if the wife is divorced or legally separated subsequent to the written separation agreement, payments made under such agreement continue to fall within the provisions of section 71(a) (2). (Emphasis added.) It is true that section 71(a) does not apply to that part of any payment which by the terms of the agreement "fix" a sum payable for the support of minor children. Section 71(b). Accordingly petitioners ask us to interpret the agreement here as fixing the amount of child support; in other words to look behind the words to the intent of the parties as evidenced by their actions and the action in the District of Columbia Court of General Sessions. As we see *17 it, what the petitioners ask us to do is precluded by the Supreme Court's decision in Commissioner v. Lester, 366 U.S. 299 (1961). In that oft cited case it was held that allocations for child support under such agreements must be specifically designated in the agreement and not left for determination by inference or conjecture. Were we free to do so, we might reach a result similar to that reached by the District of Columbia Court of General Sessions, but we must decide the tax consequences of what was done in 1966 and not simply do equity for the parties. In passing, we note that the judgment of the D.C. Court recited that there "is an absence of evidence indicating any specific agreement as to how the sum of $500.00 was to be allocated to or between members of this family * * *." But here again it is specificity and not an absence of it that Lester requires in order that section 71(a) should not apply. Petitioners also argue that the decisions of this Court in Martha K. Brown, 50 T.C. 865 (1968), affd. 415 F. 2d 310 (C.A. 4, 1969) and Allen Hoffman, 54 T.C. 1607 (1970), affd. 455 F. 2d 161 (C.A. 7, 1972), support *18 their position. They do not. Both involved court decrees under which a legal obligation was imposed. Those cases were governed by section 71(a)(1) and when the Court decided that remarriage by the wife vitiated a continuing "legal obligation" of the husband under state law, the payments were no longer includable in the wife's income under section 71(a)(1). That is not our case. Here we have no divorce decree. We have a written separation agreement. We find nothing in Pennsylvania law deciding that the remarriage of a wife vitiates the former husband's obligation under such an agreement, absent a stipulation to that effect in the agreement. To the contrary, see the venerable case of Blaker v. Cooper, 7 S. & R. 500, 6 Pa. 6 (1822). Furthermore there is no requirement in section 71(a)(2) that there be a "legal obligation." And see Regs. Section 1.71-1, supra. We have been puzzled as to what effect, if any, the proceedings in the District Court of General Sessions of the District of Columbia should have in this case. We conclude, however, that they have no effect. We are here involved with the tax consequences of payments made in 1966 by a husband to his former wife. She *19 filed the suit in General Sessions in December 1966, after the payments in question were made. The details of that litigation appear above. Both husband and wife made certain concessions, among which was that the wife no longer claimed continued support, so that was not an issue which the Court had to decide. The District of Columbia Court entered judgment in April 1967. In our opinion the judgment was not retroactive. It could not reach back for Federal income tax purposes to characterize the payments made in 1966 and it did not attempt to do so. Mary James Wilson, 49 T.C. 1 (1967). Decision will be entered for the respondent.