LINDA HOOVER, A.K.A. LINDA K. HOOVER, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent; RICHARD E. HOOVER, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Hoover v. Commissioner
Docket Nos. 12742-92, 13022-92[1]
United States Tax Court
T.C. Memo 1995-183; 1995 Tax Ct. Memo LEXIS 184; 69 T.C.M. (CCH) 2466; April 20, 1995, Filed *184 Decisions will be entered under Rule 155 in docket No. 12742-92 and for respondent in docket No. 13022-92. For Linda Hoover, Petitioner: Joseph I. Perkovich and Donald S. Plum. For Richard E. Hoover, petitioner: Terrence P. Kessler. For respondent: Anita A. Gill. COLVIN
COLVIN
MEMORANDUM FINDINGS OF FACT AND OPINION COLVIN, Judge: By separate notices of deficiency, respondent determined deficiencies in and additions to petitioners' income tax as follows: Linda Hoover
Year
Deficiency
1988
$ 8,439
Richard E. Hoover Year
Deficiency
Sec. 6653(a)(1)(A) Sec. 6653(a)(1)(B) 1987
$ 1,177.49
$ 58.87
[1] 1988
10,079.68
- 0 -
- 0 -
1989
10,122.48
- 0 -
- 0 -
Petitioners were divorced in 1988. Mr. Hoover concedes that respondent's determination of his deficiency and additions to tax for 1987 is correct. Mrs. Hoover concedes that $ 10,000 she received from Mr. Hoover in 1988 before their divorce became final was alimony. After concessions, the sole issue for decision is whether $ 36,000 Mr. Hoover paid to Mrs. Hoover in 1988 and $ 36,200 he paid in 1989 was alimony or a property settlement. *185 We hold that the payments were part of a property settlement and were not alimony. Unless otherwise indicated, section references are to the Internal Revenue Code in effect for the years in issue. Rule references are to the Tax Court Rules of Practice and Procedure. FINDINGS OF FACT Some of the facts have been stipulated and are so found. 1. Background
Petitioners resided in North Canton, Ohio, when they filed their petitions. Petitioners were married to each other from 1973 to 1988. They had no children. 2. The Marital Assets
On September 22, 1987, Mr. Hoover owned about 40 percent of the stock in Stark Ceramics, Inc. On September 30, 1988, the book value of his Stark Ceramics stock was $ 2,142,430.20. Mr. Hoover acquired his shares of Stark Ceramics stock during his marriage to Mrs. Hoover. On September 22, 1987, the fair market value of petitioners' residence at 3602 Heatherwood Circle N.W., and the adjacent lot was $ 185,000. The value of the furniture in their residence on that date was $ 10,000. Mr. Hoover had an IRA valued at $ 8,000 and an interest in an ESOP valued at $ 85,000 when he and Mrs. Hoover divorced in 1988. Mrs. Hoover had an IRA valued *186 at $ 2,000 at the time of the divorce. 3. The Divorce Decree
Mrs. Hoover filed for divorce from Mr. Hoover in 1987. The Court of Common Pleas, Stark County, Ohio, Family Court Division, granted the divorce by memorandum filed August 25, 1988. The memorandum awarded to Mrs. Hoover: their residence and the adjacent lot; the household furniture; her IRA; and "alimony as division of equity in the amount of $ 410,000.00." The court ordered Mr. Hoover to pay Mrs. Hoover $ 30,000 within 30 days of the final decree. The court also ordered that the "balance of said alimony in the amount of $ 380,000.00 shall accrue interest at the rate of six percent (6%) computed annually." The court ordered Mr. Hoover to pay "no less than $ 3,000.00 a month until said amount is paid in full." The order also provided that Mr. Hoover could accelerate payment. A preliminary draft of the Judgment Entry (Decree of Divorce) provided that "all payments of alimony shall cease upon [Mrs. Hoover's] death, [or] remarriage." However, the parties later agreed to remove that language. The Judgment Entry dated October 19, 1988, awarded to Mrs. Hoover the residence at 3602 Heatherwood Circle N.W., and the *187 adjacent lot; the household furniture; her IRA; and "alimony as division of equity in the sum of Five Hundred Twenty One Thousand, Six Hundred Forty Dollars ($ 521,640.00)." The decree of divorce awarded to Mr. Hoover his shares in Stark Ceramics; his pension fund, IRA, insurance policies, and interest in the ESOP plan; an oil well; cash on hand; and the marital interest in the Val Royal Apartments. The divorce decree also required Mr. Hoover to pay $ 521,640 to Mrs. Hoover as follows: The sum of Thirty Thousand Dollars ($ 30,000.00) within thirty (30) days of the filing of this decree, and the balance of said alimony in the amount of Four Hundred Ninety One Thousand, Six Hundred Forty Dollars ($ 491,640.00). The defendant shall pay to plaintiff no less than Three Thousand Dollars ($ 3,000.00) per month until said amount is paid in full. The defendant shall have the right to accelerate payment. It is further ordered that the plaintiff will be granted a lien on the defendant's shares in Stark Ceramics as security for said alimony division, and the defendant shall provide the plaintiff with a letter of credit issued by a commercial bank guaranteeing the payment of alimony provided *188 herein, or in the alternative the defendant shall pledge sufficient stockholdings in Stark Ceramics, Inc. with National City Bank as Escrow Agent. Said stock pledge shall remain in full force and effect until all of the alimony has been paid in full. * * *
The divorce decree also required Mr. Hoover to provide medical insurance through Stark Ceramics for Mrs. Hoover until she died or remarried. When petitioners divorced in 1988, pursuant to the divorce decree, Mr. Hoover placed enough shares of Stark Ceramics, Inc., stock in an escrow account at National City Bank of Akron, Ohio, to secure the payment of $ 521,640 due to Mrs. Hoover under the October 19, 1988, divorce decree. There is no written agreement between petitioners that states whether or not the monthly payments of at least $ 3,000 awarded under the divorce decree will terminate upon Mrs. Hoover's death. 4. Mr. Hoover's Payments to Mrs. Hoover
Mr. Hoover paid $ 46,000 to Mrs. Hoover in 1988 and $ 36,200 in 1989. He deducted those amounts as alimony on his 1988 and 1989 returns. Mrs. Hoover attached a statement to her 1988 return showing that she received $ 36,000 "Post Decree Alimony" and $ 10,000 "Pre-Decree *189 Alimony." She did not include these amounts in her income. Mrs. Hoover concedes that $ 10,000 of the 1988 payment to her was alimony because Mr. Hoover paid it under a temporary order before the final divorce decree. On January 3, 1992, Mrs. Hoover sought to accelerate the remaining payments due to her under the divorce decree ($ 377,640) because there were liquid assets from which Mr. Hoover could currently pay her. The Stark County, Ohio, Court of Common Pleas, Domestic Relations Division, denied her request on September 1, 1992, because "a trial court in a divorce proceeding does not have continuing jurisdiction to modify an award in the nature of a property settlement. Bean v. Bean, 14 Ohio App. 3d 358 [471 N.E.2d 785] (1983)." OPINION 1. Introduction
The sole issue for decision is whether payments from Mr. Hoover to Mrs. Hoover in 1988 and 1989 were alimony or a property settlement. A former spouse must include in gross income amounts received as alimony or separate maintenance payments. Sec. 71(a); [2]Brown v. Commissioner, 50 T.C. 865, 867-868 (1968), affd. 415 F.2d 310 (4th Cir. 1969). *190 Payments which are a property settlement are not taxable to the recipient under section 71. Estate of Smith v. Commissioner, 208 F.2d 349, 351 (3d Cir. 1953), affg. in part and revg. in part a Memorandum Opinion of this Court; Yoakum v. Commissioner, 82 T.C. 128, 134 (1984); Thompson v. Commissioner, 50 T.C. 522, 525 (1968). A taxpayer may deduct amounts paid to a former spouse if those payments are includable in the former spouse's gross income under section 71. Sec. 215; Yoakum v. Commissioner, supra.
If the payments in this case are alimony as defined in section 71(b), [3] then Mr. Hoover may deduct the payments under section 215(a), and Mrs. Hoover must include the amounts in income under section 61(a)(8). However, if the payments are a property settlement, *191 Mr. Hoover may not deduct them and Mrs. Hoover need not include them in income. *192 2. Whether the Payments Survive Mrs. Hoover's Death
The parties agree that the requirements of section 71(b)(1)(A), (B), and (C) are met. They disagree whether section 71(b)(1)(D), which requires that the payor spouse have no liability under the agreement to make any payment for any period after the death of the payee spouse, has been satisfied. The payments are not alimony if Mr. Hoover continues to be liable for the payments after Mrs. Hoover dies. Sec. 71(b)(1)(D). Mr. Hoover points out that the divorce decree does not state whether the payments terminate at Mrs. Hoover's death. Mr. Hoover contends that his liability for the payments terminates at Mrs. Hoover's death because the decree specifies that the payments are alimony, and under Ohio law alimony payable in installments generally terminates at the death of the payee. Hunt v. Hunt, 169 Ohio St. 276, 286, 159 N.E.2d 430, 437 (1959). Mrs. Hoover argues that the agreement imposed a liability for payments totaling $ 521,640 that would survive her death. We agree with Mrs. Hoover. The divorce decree awarded Mrs. Hoover "alimony as division of equity". Mrs. Hoover *193 argues that the use of this term shows that the parties intended to make a property settlement rather than to provide for sustenance alimony. Mr. Hoover contends that under Ohio law the term "alimony as division of equity" is a term of art meaning sustenance alimony. Neither party cites authority for their contention. Before 1991, [4] under Ohio law the term "alimony" was used to refer both to a division of property and support payments. Zimmie v. Zimmie, 11 Ohio St.3d 94, 97-98, 464 N.E.2d 142, 146 (1984); Cherry v. Cherry, 66 Ohio St.2d 348, 421 N.E.2d 1293, 1297 (1981); Wolfe v. Wolfe, 46 Ohio St.2d 399, 350 N.E.2d 413, 421 (1976). An alimony award could be used to effect the equitable distribution of marital property. 46 Ohio Jur. 3d, Family Law, sec. 457 (1994). In 1992, when Mrs. Hoover requested that the Stark County, Ohio, Court of Common Pleas, Domestic Relations Division, accelerate her remaining payments, the court declined on the grounds that it lacked jurisdiction to modify a property settlement. We believe that alimony as a division *194 of equity as used in this case refers to a division of the parties' rights in the marital property. See Martin v. Martin, 18 Ohio St.3d 292, 480 N.E.2d 1112, 1114 (1985). Under Ohio law, payments made pursuant to a property settlement in a divorce decree do not terminate when the payee spouse dies. Zimmie v Zimmie, supra (payments for property division continue after payee spouse's death or remarriage). [5] The following factors suggest that the parties intended that the payments to Mrs. Hoover would not terminate at her death: (a) The decree states that the payments are "alimony as division of equity" and must be paid "in full"; (b) the decree required that security for the *195 payments be maintained until the payments were made in full; (c) the parties removed the language from the preliminary draft of the Judgment Entry which provided that payments would cease upon Mrs. Hoover's death or remarriage; and (d) the provision for medical insurance for Mrs. Hoover stated that it was contingent upon her death or remarriage, which suggests that the court or parties could have made the payments contingent upon her death but did not. In Webb v. Commissioner, T.C. Memo. 1990-540, *196 we held that cash payments made by the husband-taxpayer under a separation agreement were not alimony because the agreement created a liability that would have been enforceable by the wife's estate. We found it significant that the agreement specifically provided that annual payments would terminate if the wife died, but was silent regarding termination of the cash payments. Mr. Hoover argues that he agreed to change the terms between the initial State court memorandum and the final divorce decree (to increase the amount of payments and add medical coverage for Mrs. Hoover) in consideration for Mrs. Hoover's agreement to structure the payments as alimony. We disagree. Mr. Hoover testified that, when the parties agreed to delete the language from the draft Judgment Entry providing that payments terminate at Mrs. Hoover's death or remarriage, his tax preparer told him that section 71(b)(1)(D) did not require that the divorce decree specifically state that there is no liability to make payments after the death of the payee spouse. [6]
*197 Upon consideration of the language of the divorce decree, the factors discussed above, and section 71(b)(1)(D), we conclude that the payments were a property settlement and were not alimony. This is consistent with the Ohio court's interpretation of its decree. We hold that the payments (other than the $ 10,000 amount conceded by Mrs. Hoover for 1988) are not alimony under section 71. Accordingly, they are not deductible by Mr. Hoover and are not taxable to Mrs. Hoover. Decisions will be entered under Rule 155 in docket No. 12742-92 and for respondent in docket No. 13022-92. Footnotes
1. These cases were consolidated for trial, briefing, and opinion.↩
1. Fifty percent of the interest due on $ 171.32.↩
2. Sec. 71(a)↩ provides: "(a) General Rule. -- Gross income includes amounts received as alimony or separate maintenance payments."
3. Sec. 71(b) provides: (b) Alimony or Separate Maintenance Payments Defined. -- For purposes of this section -- (1) In general. -- The term "alimony or separate maintenance payment" means any payment in cash if -- (A) such payment is received by (or on behalf of) a spouse under a divorce or separation instrument, (B) the divorce or separation instrument does not designate such payment as a payment which is not includible in gross income under this section and not allowable as a deduction under section 215, (C) in the case of an individual legally separated from his spouse under a decree of divorce or of separate maintenance, the payee spouse and the payor spouse are not members of the same household at the time such payment is made, and (D) there is no liability to make any such payment for any period after the death of the payee spouse and there is no liability to make any payment (in cash or property) as a substitute for such payments after the death of the payee spouse.↩
4. Beginning in 1991, the term "alimony" is no longer used in Ohio. Instead, the term "spousal support", which cannot include a division of property, is now used for sustenance alimony. Ohio Revised Code secs. 3105.18(A), 3105.171↩ (Anderson 1994).
5. See Vaught v. Vaught, 2 Ohio App.3d 264, 269, 441 N.E.2d 811, 816↩ (1981), where the court held that an alimony award based on the parties' agreement to the payment of a sum certain in installments over a definite period without contingencies was a part of the division of property, regardless of how denominated, which vested when merged into the final divorce decree and was, accordingly, a valid claim against the estate of the deceased spouse.
6. Sec. 71(b)(1)(D)↩, as amended by the Deficit Reduction Act of 1984 (DEFRA), Pub. L. 98-369, sec. 422, 98 Stat. 795, required that "(* * * the divorce or separation instrument states that there is no such liability [to make any payment after the death of the payee spouse])." The parenthetical was deleted by the technical corrections provisions of the Tax Reform Act of 1986 (1986 TRA), Pub. L. 99-514, sec. 1843(b), 100 Stat. 2853, retroactive to the effective date of DEFRA, TRA sec. 1881, 100 Stat. 2914.